[No. B152450. Second Dist., Div. Four. Oct. 3, 2002.]

JEANA HERBST, Plaintiff and Appellant, v.
CHARLENE SWAN, Defendant and Respondent.

**COUNSEL**

Armstrong & Armstrong, James J. Armstrong and Laurie Armstrong for Plaintiff and Appellant.

Gary W. Kearney for Defendant and Respondent.

**OPINION**

**HASTINGS, J.**—Appellant Jeana Herbst appeals from an order dismissing her Family Code section 3102[1] petition seeking visitation with her unemancipated minor half sibling, Jake Herbst. Section 3102 provides that a court may order visitation for a sibling of an unemancipated minor upon a court finding that one of the parents of the minor is deceased and visitation with the sibling would be in the minor's best interests. Relying on *Troxel v. Granville* (2000) 530 U.S. 57 [120 S.Ct. 2054, 147 L.Ed.2d 49] (*Troxel*), the trial court concluded that section 3102 was unconstitutional because it infringes upon the liberty interest of the surviving parent over control of the minor. Given the facts presented, we agree with the trial court and we affirm.

---

[1] All further statutory references are to the Family Code unless otherwise specified.

## FACTS

Appellant, an adult, and Jake, age six years, have the same father, Ralph Herbst, but different mothers. Respondent Charlene Swan is Jake's mother. Ralph passed away on July 12, 1999. On December 12, 2000, appellant filed a petition pursuant to section 3102, for visitation with Jake. She alleged that prior to the death of her and her brother's father, Ralph Herbst, the half siblings saw each other regularly, but that after their father's death, respondent denied all contact with Jake. She further alleged: "5. I have unsuccessfully attempted to arrive at an agreement with Jake's mother concerning this matter; [¶] 6. I love Jake and would like to remain a part of his family. I am his closest paternal relative; [¶] 7. I am informed and believe that it is in Jake's best interest to retain a positive connection to his family; [¶] 8. I am requesting a visitation order that is convenient to his mother's and Jake's schedules and that will not interfere with their routines in any way." Appellant did not allege, and there is no indication in the record, that respondent is an unfit parent. In connection with the petition, appellant filed an order to show cause seeking visitation.

Respondent filed a declaration in opposition. As pertinent, she declared: "4. At the time of Ralph Herbst's death, his estate consisted of a trust which provided for his property to be held for [appellant] and my son until their respective 25th birthdays at which time it will be distributed to his children. [¶] 5. From the time of Jake's birth up through Ralph's death, there was virtually no contact between Jake and Petitioner. Petitioner has not requested to see Jake since July 1999. She has not acknowledged Christmas or his 3rd or 4th birthdays in any way. Since Ralph's death, Petitioner has taken Jake's dog and bird and refused to return them. She has turned off the utilities in our house and also tried to have us evicted. She has demonstrated no interest in Jake or his welfare. In my opinion, she only intends to gain a strategic advantage in her pending trust action through this case. [¶] 6. I object to any temporary visitation orders being made at this time as I do not believe that it is in the best interest of my son."

At the hearing on the order to show cause, the trial court noted that section 3102 "doesn't even take into account the parents' concerns, that there is nothing in the statute that I can see that that would limit the breadth of the statute to what other than the . . . judicial officer felt they wanted to do and their opinion of what was the best interest of the child without concern to the interests of the parent and the desires of the parent." Ruling that section 3102 is "unconstitutional as it relates to siblings," the trial court entered an order dismissing the visitation petition.

## DISCUSSION

■ We review the determination of the trial court de novo. (*Redevelopment Agency v. County of Los Angeles* (1999) 75 Cal.App.4th 68, 74 [89 Cal.Rptr.2d 10].) In doing so, we must presume the validity of the statute in question, resolving all doubts in favor of the statute. (*Amwest Surety Ins. Co. v. Wilson* (1995) 11 Cal.4th 1243, 1252 [48 Cal.Rptr.2d 12, 906 P.2d 1112].) Accordingly, we uphold the statute "unless it is in clear and unquestionable conflict with the state or federal Constitution[]. [Citation.] . . . [I]f the court can conceive of a situation in which the statute can be applied without entailing an inevitable collision with constitutional provisions, the statute will prevail. [Citation.]" (*Mounts v. Uyeda* (1991) 227 Cal.App.3d 111, 122 [277 Cal.Rptr. 730].)

Section 3102 provides in relevant part: "(a) If either parent of an unemancipated minor child is deceased, the children, siblings, parents, and grandparents of the deceased parent may be granted reasonable visitation with the child during the child's minority upon a finding that the visitation would be in the best interest of the minor child. [¶] (b) In granting visitation pursuant to this section to a person other than a grandparent of the child, the court shall consider the amount of personal contact between the person and the child before the application for the visitation order." [2]

■ Appellant argues that if section 3102 is carefully applied it is not unconstitutional and that the trial court erred in summarily dismissing her petition for sibling visitation. She requests that the matter be remanded to the trial court for a full evidentiary hearing.

Relying on *Troxel, supra*, 530 U.S. 57, *Kyle O. v. Donald R.* (2000) 85 Cal.App.4th 848 [102 Cal.Rptr.2d 476] (*Kyle O.*) and *Punsly v. Ho* (2001) 87 Cal.App.4th 1099 [105 Cal.Rptr.2d 139] (*Punsly*), respondent argues that section 3102 is unconstitutional on its face as a violation of a fit parent's right to direct the associations of his or her child.

*Troxel* concerned application of Revised Code of Washington section 26.10.160(3), which provided: "Any person may petition the court for visitation rights at any time including, but not limited to, custody proceedings. The court may order visitation rights for any person when visitation

---

[2]The remainder of section 3102 states: "(c) This section does not apply if the child has been adopted by a person other than a stepparent or grandparent of the child. Any visitation rights granted pursuant to this section before the adoption of the child automatically terminate if the child is adopted by a person other than a stepparent or grandparent of the child."

may serve the best interest of the child whether or not there has been any change of circumstances." (*Troxel, supra,* 530 U.S. at p. 61 [120 S.Ct. at pp. 2057-2058].) Pursuant to this section, the Troxels, paternal grandparents of two girls, petitioned a Washington state court for visitation with their granddaughters. The grandparents requested two weekends of overnight visitation per month and two weeks of visitation each summer. The girls' mother, Tommie Granville, did not oppose visitation per se, but instead asked the court to order one day of visitation per month with no overnight stay. The court entered a decree ordering visitation one weekend per month, one week during the summer, and four hours on both of the petitioning grandparents' birthdays. The mother appealed, and the state supreme court held that section 26.10.160(3) unconstitutionally interferes with a parent's fundamental right to rear her children. (*Troxel, supra,* at p. 60 [120 S.Ct. at p. 2057].) The United States Supreme Court granted certiorari.

In a plurality decision, the United States Supreme Court affirmed the judgment of the Washington Supreme Court. The court focused on the liberty interest of a parent in the care, custody and control of their children derived from the Fourteenth Amendment to the United States Constitution and noted: " 'It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder.' [Citation.]" (*Troxel, supra,* 530 U.S. at pp. 65-66 [120 S.Ct. at p. 2060].) Justice O'Connor concluded that the statute was overbroad: "Section 26.10.160(3), as applied to Granville and her family in this case, unconstitutionally infringes on that fundamental parental right. The Washington nonparental visitation statute is breathtakingly broad. According to the statute's text, '[a]*ny person* may petition the court for visitation rights *at any time,*' and the court may grant such visitation rights whenever 'visitation may serve *the best interests of the child.*' [Citation.] That language effectively permits any third party seeking visitation to subject any decision by a parent concerning visitation of the parent's children to state-court review. Once the visitation petition has been filed in court and the matter is placed before a judge, a parent's decision that visitation would not be in the child's best interest is accorded no deference. Section 26.10.160(3) contains no requirement that a court accord the parent's decision any presumption of validity or any weight whatsoever. Instead, the Washington statute places the best-interest determination solely in the hands of the judge." (*Id.* at p. 67 [120 S.Ct. at p. 2061].)

Turning to the specific facts of the case, Justice O'Connor noted: "First, the Troxels did not allege, and no court has found, that Granville was an unfit parent. That aspect of the case is important, for there is a presumption that fit parents act in the best interests of their children. . . . Accordingly,

so long as a parent adequately cares for his or her children (*i.e.*, is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children. [Citation.] [¶] The problem here is not that the Washington Superior Court intervened, but that when it did so, it gave no special weight at all to Granville's determination of her daughters' best interests." (*Troxel, supra*, 530 U.S. at pp. 68-69 [S.Ct. at pp. 2061-2062].)

Justice O'Connor declined to define the precise scope of the parental liberty interest in the visitation context: "Because much state-court adjudication in this context occurs on a case-by-case basis, we would be hesitant to hold that specific nonparental visitation statutes violate the Due Process Clause as a *per se* matter." (*Troxel, supra*, 530 U.S. at p. 73 [120 S.Ct. at p. 2064], fn. omitted.)

Like *Troxel*, the California cases of *Kyle O.* and *Punsly* concerned grandparent visitation. Each held that section 3102 was unconstitutional as applied in those two cases.

In *Kyle O.*, the subject of the visitation dispute was Rachel, the daughter of Kimberly O. and Kyle O. Kimberly died while divorce proceedings were pending between her and Kyle O. The deceased mother's parents petitioned for a visitation schedule with their granddaughter. As here, their petition did not allege that the surviving parent, Kyle O., was an unfit parent. The trial court granted the maternal grandparents visitation with Rachel over the objection of Kyle O. who asserted that the grandparents created a " 'pervasively hostile and harmful' situation." (*Kyle O., supra*, 85 Cal.App.4th at p. 850.) The court concluded: "In light of the fact Kyle was a fit parent who had not sought to cut off grandparent visitation completely, and in light of the absence of substantial evidence rebutting the presumption in favor of a fit parent's parenting decisions, the application of section 3102 to establish a schedule of visitation over Kyle's objection unduly infringed upon his fundamental parenting right to make decisions about the care, custody, and control of his daughter. [Citation.]" (*Kyle O., supra*, 85 Cal.App.4th at p. 864.)

In *Punsly*, the surviving parent of the minor, Kathryn, was Kathryn's mother, Manwah. Kathryn had been born during the marriage of Manwah and the Punsly's son Richard. Richard and Manwah divorced and shared legal custody of Kathryn. Richard passed away a few years after the divorce and for a period of time after his death, visitation between Kathryn and the Punslys was facilitated by Manwah. In 1998, a dispute arose between

Manwah and the Punslys over the nature and frequency of visitation. The Punslys rejected Manwah's offer and filed a petition pursuant to section 3102 seeking more visitation than Manwah had suggested. Manwah objected and requested that the court not interfere: " 'I have been a very good mother to Kathryn and have made good decisions in her best interest. I ask the court to continue to allow me to do so without interference.' " (*Punsly, supra,* 87 Cal.App.4th at p. 1109.) The trial court granted relief in favor of the Punslys, compelling specific visitation dates and entering ancillary orders allowing telephone contact between Kathryn and the Punslys and that Manwah keep the Punslys current on Kathryn's schooling and to authorize the school to communicate directly with the Punslys about Kathryn. A month after the order was entered the United States Supreme Court decided *Troxel.*

Manwah appealed the order and for the first time on appeal, citing *Troxel,* she challenged the constitutionality of section 3102. First, the Court of Appeal recognized that a parent's liberty interest in the custody, care and nurture of a child is a fundamental constitutional right, which includes " 'the right to determine with whom their children should associate. [Citation.]' " (*Punsly, supra,* 87 Cal.App.4th at p. 1107.) It then stated the standard to be applied in reviewing the constitutionality of section 3102: "A constitutional due process challenge based on an alleged infringement of this fundamental right requires the court to apply a strict scrutiny test. The statute at issue must serve a compelling state interest, and it must be narrowly tailored to serve that interest. [Citation.]" (*Punsly, supra,* at p. 1107.) It then turned to the facts of the case before it. As in *Kyle O.,* it noted that there had been no allegation that Manwah was an unfit parent, and the Punslys conceded the absence of any such issue. Citing *Troxel,* the court recognized that a presumption exists that fit parents act in the best interests of their children. It then stated: "Here, the fitness of Manwah as a parent is unquestioned. Therefore, the court should have applied a presumption that her decision regarding visitation with the Punslys was in Kathryn's best interests." (*Punsly, supra,* 87 Cal.App.4th at p. 1109.) The Court of Appeal concluded: "In light of Manwah's fitness as a parent and her willingness to voluntarily schedule visitation, in combination with the trial court's erroneous application of a presumption that visitation with the Punslys was in Kathryn's best interests, we conclude the application of section 3102 over Manwah's objections unduly infringed upon her fundamental parenting rights. (*Troxel, supra,* 530 U.S. at pp. 69-70 [120 S.Ct. at pp. 2062-2063].) For this reason, the order must be reversed. Remand for further proceedings on the question of visitation is inappropriate. (*Id.* at p. 75 [120 S.Ct. at p. 2065] [where it is apparent that a visitation order violated the Constitution, the court should not force the parties into additional litigation].)" (*Punsly, supra,* 87 Cal.App.4th at pp. 1110-1111, fn. omitted.)

The parties recognize these cases deal with grandparent visitation and not sibling visitation. Appellant cites *L., K., C., B. and H.K. v. G. and H.* (1985) 203 N.J.Super. 385 [497 A.2d 215], a case in which the court granted visitation to four adult sisters with their 16-year-old sister and their brother, also a minor. The New Jersey court found "that the relationship between a child and his/her siblings is a significant and unique one, from which a myriad of benefits and experiences may be derived. The bonds which develop between brothers and sisters are strong ones, and are, in most cases, irreplaceable. . . . Therefore, this Court finds that siblings possess the natural, inherent and inalienable right to visit with each other. This right is, of course, subject to the requirement that such visitation be in the best interest of a minor child, for it is that which is of paramount concern to this Court." (*L., K., C., B. and H.K. v. G. and H.*, *supra*, 203 N.J.Super. at p. 398 [497 A.2d at p. 222].)

As respondent correctly points out, this case was decided years before *Troxel*. Whatever "inherent and inalienable" right a sibling may have under New Jersey law, it appears that the fundamental liberty interest of a parent trumps that right absent a compelling state interest.

We agree with appellant that California has recognized situations in which the independent rights of children may provide the state with a need to interfere with the parental liberty interest at issue here. For example when children have been removed from the custody of unfit parents and are subjects of the dependency system the Legislature has declared an intent to try and preserve sibling contact. (See Welf. & Inst. Code, §§ 366.26, subd. (c)(1)(E), 16002.) But that is not the situation here.

Appellant also cites section 3150, which states in pertinent part: "(a) If the court determines that it would be in the best interest of the minor child, the court may appoint private counsel to represent the interests of the child in a custody or visitation proceeding." While this section articulates the Legislature's recognition that circumstances may exist that suggest the need to appoint counsel for a minor child, there is no suggestion of such a need here, and we cannot conclude that the interest suggested by this statute overcomes the fundamental liberty interest of a fit parent to select with whom the child should associate.

Appellant's petition suggests no compelling facts to overcome the presumption that respondent is acting with the best interests of Jake in mind. We conclude the trial court did not err in concluding that section 3102, as applied to the facts presented, unconstitutionally infringes upon respondents liberty interest. It was not error to dismiss the petition.

## DISPOSITION

The order of dismissal is affirmed. Costs on appeal are awarded to respondent.

Vogel (C. S.), P. J., and Epstein, J., concurred.