[No. D039312. Fourth Dist., Div. One. Jan. 8, 2003.]

MARILYN PUNSLY et al., Plaintiffs and Respondents, v.
MANWAH HO, Defendant and Appellant.

## COUNSEL

Luce, Forward, Hamilton & Scripps and Charles A. Bird for Defendant and Appellant.

Trope and Trope and Thomas Paine Dunlap for Plaintiffs and Respondents.

## OPINION

**HUFFMAN, J.**—In this family law dispute, defendant and appellant Man-wah Ho appeals from an order denying her motion for attorney fees under the private attorney general theory of Code of Civil Procedure section 1021.5 (hereafter section 1021.5). Ho sought an award of fees incurred in a visitation dispute with the paternal grandparents of her daughter Kathryn, plaintiffs and respondents Marilyn and Bernard Punsly. Ho contends that since the legal position she took in the visitation dispute was ultimately upheld in a published opinion of this court, *Punsly v. Ho* (2001) 87 Cal.App.4th 1099 [105 Cal.Rptr.2d 139] (our prior opinion), she meets the criteria for an award of attorney fees under section 1021.5, because her appeal (1) served to vindicate an important public right; (2) conferred a significant benefit on the general public or a large class of persons; and (3) was necessary and imposed a financial burden on her which was out of proportion to her individual stake in the matter. (*Woodland Hills Residents Assn., Inc. v. City Council* (1979) 23 Cal.3d 917, 933 [154 Cal.Rptr. 503, 593 P.2d 200].)

In denying the motion, the trial court relied on the following findings: Neither Ho nor the Punslys had engaged in any bad faith or other inappropriate conduct; the parties' positions about the amount of time Ho's daughter should spend with the Punslys were not too far apart, although the issues

regarding the control over that time were relatively great; and Ho had pursued the prior appeal primarily for her personal nonmonetary benefit, such that "Section 1021.5 was not intended to authorize an award of attorney's fees in a case of this type, although the Court does not find that an award of Section 1021.5 attorney's fees is precluded in all family law cases under any circumstance."

Although the specific findings made by the trial court do not specifically track the language of section 1021.5, the order denying fees is nevertheless proper because the record supports the conclusion that this was not an appropriate case for an award of such fees under the statutory criteria as amplified by case law, for the reasons we will explain.

FACTUAL AND PROCEDURAL BACKGROUND

As set forth in our prior opinion, "Manwah [Ho] married the Punslys' son, Richard, and they had one child, Kathryn, born in 1990. In 1992, Manwah and Richard divorced and while they shared joint legal and physical custody of Kathryn, Manwah assumed primary physical custody. Richard was diagnosed with bone cancer after the divorce and died in 1996. Following Richard's death, the Punslys continued to regularly see Kathryn about every two months. . . . [¶] For a period of time in 1998, the Punslys did not see Kathryn. Consequently, the Punslys sought legal counsel to arrange a visitation schedule. Manwah objected to the nature and frequency of the Punslys' proposed schedule and offered a more limited one. The Punslys rejected this offer and petitioned the court under section 3102[1] to order Manwah to comply with their visitation schedule." (*Punsly v. Ho, supra,* 87 Cal.App.4th at p. 1102.) Such an order was entered and Ho successfully appealed. Her contention in the prior appeal was that Family Code section 3102 was unconstitutional, as applied to her, in light of the recent United States Supreme Court case of *Troxel v. Granville* (2000) 530 U.S. 57 [120 S.Ct. 2054, 147 L.Ed.2d 49] (*Troxel*), a case concerning the constitutionality of a nonparental visitation statute.

As this court explained in our prior opinion, the application of Family Code section 3102 over Ho's objections unduly infringed upon her fundamental parenting rights as outlined in *Troxel, supra,* 530 U.S. at pages 69 to

---

[1]Family Code section 3102 states in relevant part: "(a) If either parent of an unemancipated minor child is deceased, the children, siblings, parents, and grandparents of the deceased parent may be granted reasonable visitation with the child during the child's minority upon a finding that the visitation would be in the best interest of the minor child. [¶] (b) In granting visitation pursuant to this section to a person other than a grandparent of the child, the court shall consider the amount of personal contact between the person and the child before the application for the visitation order."

70 [120 S.Ct. at pages 2062 to 2063]. We reversed the visitation order "[i]n light of Manwah's fitness as a parent and her willingness to voluntarily schedule visitation, in combination with the trial court's erroneous application of a presumption that visitation with the Punslys was in Kathryn's best interests." (*Punsly v. Ho, supra,* 87 Cal.App.4th at p. 1110.) It was ordered that the Punslys would pay Ho's costs on appeal. (*Id.* at p. 1111.)

Following remand, Ho brought her motion for an award of private attorney general fees under section 1021.5. She stated that under her agreement with her attorney, she was personally responsible for $10,000 of the fees incurred, and she sought an award of that amount and the remaining portion that her pro bono counsel had incurred, plus a multiplier factor (for a total of $58,452.50 sought).[2]

The Punslys opposed the motion, contending that the nature of this dispute did not fall within the statutory parameters of section 1021.5. The trial court agreed, making findings that (1) neither side had engaged in any bad faith or other inappropriate conduct; rather, the Punslys had attempted to assert rights under a statute in a way that it had been applied for years (Fam. Code, § 3102); (2) "[t]he practical difference in the parties' positions about the amount of time Respondent's minor daughter should spend with Petitioners was relatively small. However, the control issues were relatively great"; and most significantly, (3): "Respondent pursued her successful appeal primarily because she wanted to exercise parental control over the amount of time that Petitioners spend with her daughter. As such, she pursued the appeal primarily for her personal nonmonetary benefit, and Code of Civil Procedure Section 1021.5 was not intended to authorize an award of attorney's fees in a case of this type, although the Court does not find that an award of Section 1021.5 attorney's fees is precluded in all family law cases under any circumstance."

This appeal of the denial of attorney fees followed.

## DISCUSSION

## I

### *Section 1021.5 Standards*

█  The governing principles on applications for private attorney general fees under section 1021.5 have been well laid out in *Families Unafraid to*

---

[2]By the time of the reply papers below, the amount requested had increased to $70,354.09. At the hearing on the motion, after the trial court initially denied any award of fees, Ho's attorney was allowed to reopen the proceedings to request that at a minimum, the $10,000 for which Ho was personally liable should be awarded, based on the statute and the equities of the case. However, the trial court adhered to its ruling denying any award of fees.

*Uphold Rural El Dorado County v. Board of Supervisors* (2000) 79 Cal.App.4th 505, 511-512 [94 Cal.Rptr.2d 205] (*FUTURE*), as follows: " 'Section 1021.5 codifies the "private attorney general" doctrine under which attorney fees may be awarded to successful litigants. [Fn. omitted.] "The doctrine rests upon the recognition that privately initiated lawsuits are often essential to the effectuation of the fundamental public policies embodied in constitutional or statutory provisions, and that, without some mechanism authorizing the award of attorney fees, private actions to enforce such important public policies will as a practical matter frequently be infeasible. [Citations.]" [Citation.] Entitlement to fees under section 1021.5 requires a showing that the litigation: "(1) served to vindicate an important public right; (2) conferred a significant benefit on the general public or a large class of persons; and (3) [was necessary and] imposed a financial burden on plaintiffs which was out of proportion to their individual stake in the matter." [Citation.]' [Citation.] In short, section 1021.5 acts as an incentive for the pursuit of public interest-related litigation that might otherwise have been too costly to bring. [Citations.] [¶] The trial court's determination regarding the above noted three criteria of section 1021.5 lies within the court's discretion. [Citation.] The trial court is to assess the litigation realistically and determine from a practical perspective whether these criteria have been met. [Citation.]" (Fn. omitted.)

█ Again as summarized in *FUTURE, supra,* 79 Cal.App.4th 505, 511-512, in reviewing such a trial court determination, an appellate court will decline to disturb the trial court's exercise of discretion, "absent a showing that the court abused it—for example, where the record establishes there is no reasonable basis for the determination. [Citation.] In reviewing the trial court's decision, we must pay " 'particular attention to the trial court's stated reasons in denying or awarding fees and [see] whether it applied the proper standards of law in reaching its decision.' " [Citation.] 'The pertinent question is whether the grounds given by the court for its denial of an award are consistent with the substantive law of section 1021.5 and, if so, whether their application to the facts of th[e] case is within the range of discretion conferred upon the trial courts under section 1021.5, read in light of the purposes and policy of the statute.' [Citing *City of Sacramento v. Drew* (1989) 207 Cal.App.3d 1287, 1298 [255 Cal.Rptr. 704]]."

II

*Developing Status of Grandparent Visitation Law*

In our prior opinion in this case, this court discussed the importance of *Troxel, supra,* 530 U.S. 57, as governing the statutory analysis required

under Family Code section 3102, regarding the fundamental parental rights at issue. We said, "*Troxel* essentially affirmed the cardinal rule, as stated by the Supreme Court, ' "that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder." ' [Citations.] 'Encompassed within [this] well-established fundamental right of parents to raise their children is the right to determine with whom their children should associate. [Citation.]' [Citation.]" (*Punsly v. Ho, supra,* 87 Cal.App.4th at p. 1107.) We applied a strict scrutiny test to the statute at issue, finding it "must serve a compelling state interest, and it must be narrowly tailored to serve that interest." (*Ibid.*) Our conclusion was that Family Code section 3102 was unconstitutional, as applied to Ho, due to its interference with fundamental parenting rights. (*Punsly v. Ho, supra,* at p. 1110.) Our prior opinion was publishable under the criteria of California Rules of Court, rule 976(b),[3] because it applied an existing rule of law to a set of facts that was significantly different from those stated in published opinions (rule 976(b)(1)). It also involved a legal issue of continuing public interest (rule 976(b)(3)), and we believed it made a significant contribution to legal literature by reviewing the development of a common law rule "or the legislative or judicial history of a provision of a constitution, statute, or other written law." (Cal. Rules of Court, rule 976(b)(4).)

Around the time that this court was considering the issues presented in its prior opinion in this case, we also had before us another appeal by a mother challenging a visitation order in favor of grandparents, as unconstitutional as applied under a companion statute, Family Code section 3104. (*In re Marriage of Harris* (2001) 92 Cal.App.4th 499 [112 Cal.Rptr.2d 127], review granted Jan. 3, 2002, S101836.) As noted in Ho's reply brief here, the California Supreme Court granted review in the *Harris* case, effective January 3, 2002. The court's press release states the issues presented as follows: "In re Marriage of Harris, S101836. (D036144; 92 Cal.App.4th 499.) Petition for review after the Court of Appeal reversed an order for grandparent visitation rights under Family Code section 3104. This case presents issues concerning the burden of proof on a petition for grandparent

---

[3]California Rules of Court, rule 976(b), sets forth standards for publication of opinions by the Courts of Appeal and lower courts, as follows: "No opinion of a Court of Appeal or an appellate department of the superior court may be published in the Official Reports unless the opinion: [¶] (1) establishes a new rule of law, applies an existing rule to a set of facts significantly different from those stated in published opinions, or modifies, or criticizes with reasons given, an existing rule; [¶] (2) resolves or creates an apparent conflict in the law; [¶] (3) involves a legal issue of continuing public interest; or [¶] (4) makes a significant contribution to legal literature by reviewing either the development of a common law rule or the legislative or judicial history of a provision of a constitution, statute, or other written law."

visitation rights, the standards governing such a petition, and whether the child's constitutional rights of liberty, association and privacy must be considered along with the parental right to exercise parental authority."

In light of this development in the law, pending appeal, we requested that the parties in the current case submit supplemental letter briefs on the following issues: "1. With reference to any entitlement to private attorney general fees under Code of Civil Procedure section 1021.5, what difference does it make to this case that the Supreme Court has granted review in a case raising similar issues and on which there was a similar result [visitation order in favor of grandparents held unconstitutional under statute as applied]? (*In re Marriage of Harris, supra,* S101836.) [¶] 2. What difference does it make to the issues in the case before this court that the challenged visitation order was made under Family Code section 3102, as opposed to the statute under consideration in the review of the pending case *In re Marriage of Harris, supra,* S101836, (i.e., Fam. Code, § 3104)?"

The parties thoughtfully responded to our request as follows. According to Ho, her efforts toward influencing our prior opinion served to enforce an important right affecting the public interest, thus conferring a significant nonpecuniary benefit on a large class of persons, and the grant of review in *In re Marriage of Harris, supra,* S101836, does not change this analysis. Rather, *Harris* involves a more specific statute (Fam. Code, § 3104) and thus represents a second generation of litigation about constitutional limits on any third parties' efforts to invoke state action to overcome fit custodial parental decisions about the socialization of their children. According to Ho, all further litigation in this field will be conducted in light of our prior opinion, concerning the applicability of the compelling state interest test when visitation is sought by third parties over the objection of a fit, sole surviving parent.

In contrast, the Punslys contend that any evaluation of the principles set forth in our prior opinion should await the Supreme Court's statements in *In re Marriage of Harris, supra,* S101836, and therefore the trial court cannot be said at this point to have erred in its assessment of the significance of the benefit conferred, and the size of the class that received that benefit, due to the issuance of the prior opinion. According to the Punslys, although it is not entirely clear whether the ordinary Family Code section 2030 attorney fees considerations will apply in a case such as *Harris,* involving Family Code section 3104 and a pending dissolution (as opposed to a case such as this, arising under Fam. Code, § 3102 and involving a sole surviving parent), it is very significant that there are many other specific attorney fees provisions that apply in other situations covered by the Family Code. As such, the

Punslys argue the courts should not encourage awards of section 1021.5 fees, in the family law context, because this would accomplish through a back door entry that which the Legislature has prohibited through the front door.

At oral argument, the parties referred to two published cases which have relied upon the rule stated in our prior opinion in other visitation contexts, and hence have expanded its applicability to other districts of the Court of Appeal. These cases are *Zasueta v. Zasueta* (2002) 102 Cal.App.4th 1242, 1252 [126 Cal.Rptr.2d 245] (5th Dist.), and *Herbst v. Swan* (2002) 102 Cal.App.4th 813, 819-820 [125 Cal.Rptr.2d 836] (2d Dist.).

## III

### *Application of Criteria Under Section 1021.5 Standards*

In this case, the trial court ruled that Ho had showed no entitlement to fees under section 1021.5, for several reasons, including the lack of bad faith or inappropriate conduct by either party. Also, the court noted that although there were significant control issues concerning visitation, there were relatively small differences between the parties about the amount of time the child should spend with the Punslys. The main finding by the trial court was that Ho had pursued her successful appeal "primarily because she wanted to exercise parental control over the amount of time that [the Punslys] spend with her daughter. ■ As such, she pursued the appeal primarily for her personal nonmonetary benefit, and Code of Civil Procedure Section 1021.5 was not intended to authorize an award of attorney's fees in a case of this type, although the Court does not find that an award of Section 1021.5 attorney's fees is precluded in all family law cases under any circumstance."[4]

On appeal, it is essentially not disputed that the issues presented in our prior opinion qualified under the first of the section 1021.5 criteria for eligibility for fees, as serving " ' "to vindicate an important public right." ' " (*FUTURE, supra*, 79 Cal.App.4th at p. 511.) The existence of United States and California Supreme Court cases on this exact subject, grandparent

---

[4]The trial court was correct that nothing in section 1021.5 precludes an award of fees simply because the case arises in a family law context. (See *County of San Diego v. Lamb* (1998) 63 Cal.App.4th 845, 852-853 [73 Cal.Rptr.2d 912].) As the parties have noted, there are numerous statutes in the Family Code authorizing awards of attorney fees in various procedural contexts specifically involving children, as well as dissolutions. (See, e.g., Fam. Code, §§ 2030, 3028, 3428, 3452, 3557, 4002, 4063, etc.) However, Family Code section 3102 does not contain a fees provision, and it is the unique circumstance of vindication of a constitutional right that arguably gives rise to a fee entitlement here, rather than the family law nature and context of the proceedings.

visitation rights, confirms this. However, the parties strongly dispute the applicability of the second and third criteria.

■   We are to review the trial court's determinations regarding the presence or absence of these criteria for abuse of discretion. (*FUTURE, supra,* 79 Cal.App.4th at p. 511.) "The trial court is to assess the litigation realistically and determine from a practical perspective whether these criteria have been met." (*Ibid.*) However, if the record establishes there is no reasonable basis for the determination that there is no support for these criteria, we will not defer to the ruling. The overall question is whether the trial court applied the proper standards of law in reaching its decision, as consistent with the substantive law of section 1021.5. If so, the next question is whether the application of those standards to the given facts was within the range of discretion conferred upon the trial court under section 1021.5 "in light of the purposes and policy of the statute." (*City of Sacramento v. Drew, supra,* 207 Cal.App.3d 1287, 1298; *FUTURE, supra,* 79 Cal.App.4th at p. 511.) In examining the order on appeal, we review the trial court's actual ruling, not its reasons. A judgment or order correct in theory will be affirmed, even where the trial court's given reasoning is erroneous. (*Davey v. Southern Pacific Co.* (1897) 116 Cal. 325, 329 [48 P. 117].)

Although all the criteria of section 1021.5 are closely interrelated (see *Beasley v. Wells Fargo Bank* (1991) 235 Cal.App.3d 1407, 1415 [1 Cal.Rptr.2d 459]), we discuss these second and third considerations separately, for ease of reference. First, however, we dispose of several preliminary issues. ■   The fact that pro bono counsel and conditional fee obligations are involved is not dispositive. As explained in *FUTURE,* even where counsel agree to provide representation without charge, with the understanding that they will be compensated if the court ultimately awards attorney fees to their clients under section 1021.5, "[t]his arrangement does not foreclose a section 1021.5 award." (*FUTURE, supra,* 79 Cal.App.4th at p. 522 [" 'Because the basic rationale underlying the "private attorney general" theory [is] to encourage the presentation of meritorious . . . claims affecting large numbers of people, . . . a denial of the benefits of the rule to such attorneys would be essentially inconsistent with the rule itself.' [Citation.]."].) Moreover, the policy against contingency fees in family law matters that involve property divisions, as creating a potential conflict of interest between attorney and client, will not apply in the child visitation context. (See Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2001) ¶¶ 1:256 to 1:266, pp. 1-76.2 to 1-76.5 [dealing with contingency fee problems in the family law area, concerning the allocation of assets].)

■   Next, even though the Punslys are individuals, rather than corporate or governmental parties, the rules of section 1021.5 are still applicable for

purposes of determining the public benefit and other issues concerning an entitlement to attorney fees. (*Planned Parenthood v. Aakhus* (1993) 14 Cal.App.4th 162, 175 [17 Cal.Rptr.2d 510]; *Feminist Women's Health Center v. Blythe* (1995) 32 Cal.App.4th 1641, 1669 [39 Cal.Rptr.2d 189] [private individual status does not preclude an award of such attorney fees].)

■ Also, we may largely disregard the trial court's reliance in its ruling on a lack of bad faith or inappropriate conduct by either party, which is not a consideration falling within the scope of the section 1021.5 criteria. Although such attorney fees have been awarded against individual defendants whose activities giving rise to the fees award included confrontational conduct, such as chasing and obstructing the movement of vehicles of patrons entering and leaving a clinic's parking lot, as well as other insulting and threatening behavior (*Planned Parenthood, supra,* 14 Cal.App.4th at pp. 167, 172), it was not the individual motivation or personal animus that supported the court's award of fees; rather, the award was based in relevant part on a finding that there was benefit to the public from the fee applicant's obtaining of an injunction against such conduct, to prevent impairment of constitutional privacy rights. (*Id.* at p. 172.) Bad faith is not a statutory criteria under section 1021.5. However, the arguable prevention of impairments of constitutional privacy rights does fall under the scope of the statute. (*Planned Parenthood,* at p. 172.)

As a commentator has stated, "Entitlement to fees under [section] 1021.5 is based on the impact of the case as a whole." (Pearl, Cal. Attorney Fee Awards (Cont.Ed.Bar 2d ed. 1994) § 4.11, p. 72.) The statute states the criteria in the conjunctive ("and"), requiring each standard to be met in order for a fee award to be justified. With these considerations in mind, we turn to the record regarding the relevant criteria.

A

*Did the Litigation Confer a Significant Benefit on the General Public or a Large Class of Persons?*

■ The resolution of the questions presented in the underlying prior opinion necessarily required a balancing of competing policies, including parental privacy versus the benefits to children of extended family visitation. Our prior opinion was required to apply the general principles announced in *Troxel, supra,* 530 U.S. 57, in the specific context of this dispute under Family Code section 3102. We resolved the constitutional issues presented on an as-applied basis, thus creating a fairly narrow holding, even though important fundamental parental rights were involved. Although our interpretation of Family Code section 3102 placed certain burdens on how it is to be

applied by the family law courts, the statute itself remains effective. The fact that the opinion was published and has been cited by other California and sister state courts, as well as secondary authorities, indicates that it has served an important function in clarifying the law applicable to those persons who fall within the scope of Family Code section 3102, as family members of a child with a deceased parent, where visitation questions have arisen.[5]

However, due to the California Supreme Court's grant of review in *In re Marriage of Harris, supra,* S101836, another grandparent visitation case, it appears that the standards and criteria for ordering grandparent visitation are still open questions and the legal policies governing this area of family law are still evolving. There are strong similarities between the issues dealt with in our prior opinion, concerning the applicability of the compelling state interest test when visitation is sought by third parties over the objection of a fit, sole surviving parent, and the issues presented and pending in *Harris.* The nature and extent of the benefit conferred upon the public in this area of family law cannot be fully assessed at this time.

Thus, even though our prior opinion was a serious attempt to advance certainty and predictability in this area of family law, the story is not over yet, and the "significant benefit" criteria cannot be said to be a determining factor in the overall question of fee entitlement under these circumstances.

B

*Appropriateness of Fees Award: Was the Litigation Necessary and Did It Impose a Financial Burden on the Mother out of Proportion to Her Individual Stake in the Matter?*

As a threshold matter, and as the trial court acknowledged, Ho has clearly satisfied any requirement that this litigation was "necessary," due to the uncertainty that existed at all relevant times (and to some extent, to the present), concerning the applicable principles of law. It is also clear that this litigation imposed a personal financial burden on Ho that was significant ($10,000 owing out of the $58,452.50 originally requested by pro bono counsel, including a multiplier factor). Although the trial court made a factual finding that she pursued the appeal primarily for her personal non-monetary benefit, the record is also readily susceptible to an inference that

---

[5]See as secondary references citing our prior opinion, e.g., Hogoboom and King, California Practice Guide: Family Law, *supra,* paragraph 7:512 et seq.; 10 Witkin, Summary of California Law (2002 supp.) Parent and Child, section 231G-4, pages 192 to 194; 33 California Jurisprudence Third (2002 supp.) Rights of Grandparents, section 942, pages 55-56.

she did it on principle, to vindicate deeply held beliefs held by herself and presumably, by other such parents. In any case, without a sufficiently "concrete personal interest in the issue being litigated, the putative plaintiff would lack standing to bring an action." (*Press v. Lucky Stores, Inc.* (1983) 34 Cal.3d 311, 321, fn. 11 [193 Cal.Rptr. 900, 667 P.2d 704].) As the court said in *FUTURE, supra,* 79 Cal.App.4th at page 514, to explain the type of interests that may be involved: "We can envision nonfinancial personal interests of sufficient strength and specificity to prompt an individual to pursue vigorously a suit notwithstanding a substantial financial burden in doing so. After all, how often has litigation been pursued as 'a matter of principle.' Not 'principal,' we note."[6]

In *FUTURE*, at that point, the court was discussing the problems in evaluating the "financial burden of private enforcement" criterion of section 1021.5, in terms of determining when fees would be properly awarded, such as when " ' " 'the necessity for pursuing the lawsuit placed a burden on the plaintiff 'out of proportion to his individual stake in the matter.' " ' [Citations.]" (*FUTURE, supra,* 79 Cal.App.4th at p. 513.) In that case, the court formulated rules to address whether a party who requests such fees may meet the financial burden criterion of section 1021.5, subdivision (b), even if that party has a strong personal, as well as public-spirited, interest in the subject. The court said: "[A]n aesthetic or environmental interest will not be considered sufficient to block an award of attorney fees under the financial burden criterion unless certain conditions are met. That interest must be specific, concrete and significant, and these attributes must be based on objective evidence. In short, for an aesthetic or environmental interest to block an award of attorney fees under the financial burden criterion, that interest must function essentially in the same way in the comparative analysis as a financial interest, clearly an objective interest. A subjective, vaguely grounded aesthetic interest, even if 'heart-felt,' will not be considered sufficient; nor will a mere abstract interest in aesthetic integrity or environmental preservation suffice to block an award of attorney fees." (*FUTURE, supra,* 79 Cal.App.4th at p. 516, italics omitted.)

Both in *FUTURE, supra,* 79 Cal.App.4th 505, and in *Williams v. San Francisco Bd. of Permit Appeals* (1999) 74 Cal.App.4th 961 [88 Cal.Rptr.2d

---

[6]As the Punslys point out, the Family Code contains mediation provisions that are required in visitation disputes. (Fam. Code, §§ 3170, subd. (a), 3171, subd. (a).) They argue this implies that section 1021.5 attorney fees awards are inappropriate to encourage litigation in this context, where there is a mediation policy in effect. We think they are comparing apples and oranges, and the presence or absence of mediation requirements before undertaking litigation is immaterial, as the statutory criteria under section 1021.5 otherwise take into account whether litigation was actually necessary, due to the failure of any other means of dispute resolution.

565] (*Williams*), the courts were deciding private attorney general fee entitlement issues where there were claims that the party seeking fees had an overriding personal interest under the section 1021.5 financial burden criterion, in the nature of an aesthetic, abstract interest that overcame any public policy goals of the lawsuit. In some cases, such concerns can be addressed by the trial court, by making an award that reflects an adjustment to prevent an "all or nothing" attorney fee award (e.g., an award that reflects the party's pursuit of a significant public interest, but that is reduced to take into account any solely personal interests of the party). (*FUTURE, supra,* 79 Cal.App.4th at p. 517, fn. 2.)

As Ho pointed out at oral argument in this case, the particular abstract or aesthetic interests discussed in *FUTURE, supra,* 79 Cal.App.4th 505, and *Williams, supra,* 74 Cal.App.4th 961, were still significantly tied to those parties' property interests and assets, at least to some extent, as those cases arose in environmental litigation or zoning contexts, so that a financial aspect had to be taken into account in the fees decision. Our case is different, as it arose in a purely personal, family relations context, without any pertinent monetary or asset features. Nevertheless, the basic framework of the section 1021.5 fees statute can and must be adapted to resolve the issues presented here. ▉ "The basic legal standard for applying the financial burden criterion involves a realistic and practical comparison of the litigant's personal interest with the cost of suit." (*FUTURE, supra,* 79 Cal.App.4th at p. 515.) We ask, was the cost of litigation out of proportion to the individual litigant's stake in the litigation? (*Ibid.*) We seek to implement the underlying policy goal of the section, to allow "an incentive for the pursuit of public interest-related litigation that might otherwise have been too costly to bring." (*Id.* at p. 511.)

Here, the trial court observed at the hearing on fees: "I don't think that the statute was designed for fee awards in a case of this type. I am not saying it could never be done, but I don't think that was the general philosophy behind it. I think that's why we do not have a case that resembles this where it's ever been done, at least in a reported case. *And I don't see any rights that I am protecting here really of the general public.* [¶] *I think this was a dispute between two sides that was very personal in nature, and that's really what it got down to. . . .* The mother is to be commended in some ways for pursuing this and sticking to what she thought was the right thing for herself and her child, and particularly her child, and being willing to pursue it to this length. But I don't think that that should be a basis for a section 1021.5 fee award against the Punslys." (Italics added.)

At the hearing, the trial court went further, to consider whether a partial award of the amount of fees requested would be appropriate in light of all

the circumstances, but it ultimately adhered to its view that the litigation had primarily been pursued for the personal benefit of Ho and therefore was not the type of action contemplated by section 1021.5.

■ We agree. When we take all the relevant considerations into account, we have serious doubts that the financial burden on Ho and also, ultimately, on her pro bono counsel, through this litigation, can be considered to be out of proportion to her individual stake in the matter, such that the trial court would have been required to conclude as a matter of law that an award of attorney fees under section 1021.5 was "appropriate." In light of the proportionality test which compares the strength of the private interest with the cost of litigation, we cannot say the trial court erred in concluding that Ho's stake in the litigation was roughly proportionate to the cost, and that she and her counsel are not entitled to this form of relief. This was a fact-intensive case and resulted in a relatively narrow, as-applied ruling on the constitutional principles involved. It was intensely personal in nature, and although future litigation will doubtless be guided by it to some extent, the law is still developing in this area.

To compare, to paraphrase, and to apply the test developed in *FUTURE, supra,* 79 Cal.App.4th at pages 516 to 517: For this personal, family-related parental interest "to block an award of attorney fees under the financial burden criterion, that interest must function essentially in the same way in the comparative analysis as a financial interest, clearly an objective interest. A subjective, vaguely grounded [parental] interest, even if 'heart-felt,' will not be considered sufficient; nor will a mere abstract interest in [family] integrity or [parental rights] preservation suffice to block an award of attorney fees." (*Id.* at p. 516.) We believe Ho's strong, objectively ascertainable personal interests fully justified this litigation, along with any burden incurred to pursue it, and these interests act as a block to a fees award from the Punslys. Here, where Ho's parental interests in assessing and pursuing her child's best interests, as she saw them, were admittedly paramount in her mind, how can we say some other incentive was needed to pursue this litigation? How can we conclude otherwise, than that her personal interest in the issues must be deemed sufficient to block any potential fee award that would have been grounded in any trial court determination that achieving a "greater public good" (*FUTURE, supra,* 79 Cal.App.4th at p. 517) was the main incentive for this litigation, or grounded in any trial court determination that the burden of achieving this "greater public good" was proportionally greater than her individual stake in the matter?

If we could find in the record no reasonable basis for the trial court's determination, in light of its stated reasons for denying fees, we would be

justified in reversing the order of denial. However, we do not find that to be the case here. The trial court was well advised of the applicable statutory criteria, and although it also took a number of other, more peripheral, factors into account as well, we cannot say it abused its discretion in ruling on the section 1021.5 fee application in this manner.

## DISPOSITION

The order is affirmed. Each party to bear its own costs on appeal.

Kremer, P. J., and Haller, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 26, 2003. Kennard, J., and Moreno, J., were of the opinion that the petition should be granted.