[No. B161235. Second Dist., Div. Six. Dec. 9, 2003.]

In re Marriage of JAMES and CLAUDINE W.;
JAMES W., Respondent, v.
CLAUDINE W., Respondent;
DAVID H., Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for partial publication. The portions of this opinion to be deleted from publication are identified as those portions between double brackets, e.g., [[/]].

70

**COUNSEL**

Misho, Kirker & Brown and Vanessa Kirker for Appellant.

Law Office of Tammi L. Faulks and Tammi L. Faulks for Respondent James W.

No appearance for Respondent Claudine W.

**OPINION**

**PERREN, J.**—David H. appeals an order allowing visitation between his son C.H. and C.H.'s stepfather, James W. David challenges the constitutionality

of Family Code section 3101[1] which gives the trial court discretion to order stepparent visitation. We hold that the application of section 3101 in this case violated David's substantive due process right to the care, custody and control of his child by failing to apply a presumption that a parent's decision regarding visitation is in the best interest of the child. (*Troxel v. Granville* (2000) 530 U.S. 57 [147 L.Ed.2d 49, 120 S.Ct. 2054] (*Troxel*).)

[[/]]*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

We reverse and remand for further proceedings.

## FACTS AND PROCEDURAL HISTORY

C.H. was born in 1992 and is the son of appellant David and respondent Claudine W., who were never married. Shortly after C.H.'s birth, David sought and received judicial recognition that he is C.H.'s father and has had court-ordered visitation ever since.

In 1995, James married Claudine and became stepfather to C.H. In 2000, James filed a petition for dissolution of his marriage to Claudine and sought an order for visitation with C.H. James alleges that he has been actively involved in C.H.'s life since birth and has a strong relationship with him.

James and Claudine mediated their visitation dispute in August 2000 and reached an agreement permitting regular visitation between James and C.H. during the subsequent six-month period. Later mediations resulted in a continuation of visitation although the number of visits was reduced in August 2001.

On February 1, 2002, after being unable to reach further agreement with James through mediation, Claudine filed a motion to terminate James's visitation with C.H. in its entirety. Claudine alleged that James intended to relocate to San Jose, California, and that it was not in C.H.'s best interest to allow "out of town" visits between James and C.H. Shortly after Claudine filed her motion, David successfully moved to intervene in the visitation dispute, and joined in Claudine's request to terminate James's visitation rights.

In March 2002, the court entered a preliminary order suspending visits between James and C.H. The court ruled that "if both natural parents feel that

---

[1] All statutory references are to the Family Code unless otherwise stated.

*See footnote, *ante*, page 68.

it is not significant for the step-father to have visitation with [C.H.], then . . . no visitation with [C.H.] by the stepfather shall be ordered at this time without permission from the natural parents and without prejudice." The court appointed clinical psychologist Robert M. Owens, Ph.D., to make an evaluation and recommendation to the court as to whether and to what extent James's visits with C.H. should be resumed.

A custody hearing was held on June 3, 2002. David and Claudine conceded that C.H. referred to both James and David as "Dad," but each testified that James had a negative influence on C.H. and the family as a whole, and that further visitation by James was not in C.H.'s best interest. James testified that he had a quasi-parental relationship with C.H. and that continued contact would be beneficial to C.H.

The trial court admitted Dr. Owens' written report and "adopted" its facts. Doctor Owens stated, among other things, that C.H. desired ongoing visits with James and that James was a father figure to C.H. who had enhanced C.H.'s life. Although he concluded that conflict among the adults and some disruptive behavior by James made more extensive visitation inappropriate, Dr. Owens recommended one weekend visit between James and C.H. every other month and one seven-day visit during the summer. At the end of the hearing, the trial court made an express finding that it was in C.H.'s best interest to have visitation with James and ordered visitation in accordance with Dr. Owens' recommendations. The court made no finding or comment as to what, if any, weight it accorded the decision of the parents that C.H. should not visit with James.

## DISCUSSION

### As Applied, Section 3101 Violates Parent's Due Process Right

Section 3101 provides that, in a marital dissolution action between a stepparent and a "birth parent," the court may grant reasonable visitation to the stepparent when such visitation is "determined to be in the best interest of the minor child." (*Id.*, subds. (a), (d).)[2] David contends that section 3101 is

---

[2] Section 3101 provides in full: "(a) Notwithstanding any other provision of law, the court may grant reasonable visitation to a stepparent, if visitation by the stepparent is determined to be in the best interest of the minor child. [¶] (b) If a protective order, as defined in Section 6218, has been directed to a stepparent to whom visitation may be granted pursuant to this section, the court shall consider whether the best interest of the child requires that any visitation by the stepparent be denied. [¶] (c) Visitation rights may not be ordered under this section that would conflict with a right of custody or visitation of a birth parent who is not a party to the proceeding. [¶] (d) As used in this section: [¶] (1) 'Birth parent' means 'birth

unconstitutional because it permits a trial court to grant visitation rights to a stepparent without deference to the due process right of parents to make decisions concerning the care and upbringing of their children. We conclude that section 3101 was unconstitutionally applied in this case.

■ The United States Supreme Court has long recognized the substantive due process right of parents to raise their children. (*Troxel, supra,* 530 U.S. at pp. 65–70 (plur. opn. of O'Connor, J.).) Although generally not expressed in due process language, California courts have similarly concluded that the parenting right is fundamental. (*In re B.G.* (1974) 11 Cal.3d 679, 693–694 [114 Cal.Rptr. 444, 523 P.2d 244]; *In re Carmaleta B.* (1978) 21 Cal.3d 482, 489 [146 Cal.Rptr. 623, 579 P.2d 514].)

In *Troxel,* a mother decided to limit visitation between her two children and their paternal grandparents shortly after the death of the father. The grandparents petitioned for a visitation order under a Washington statute that permitted the court to order visitation solely on the basis of a determination that " 'visitation may serve *the best interest of the child.*' " (*Troxel, supra,* 530 U.S. at p. 67.) Over the mother's opposition, the Washington court granted the petition after finding that it was in the children's best interest to spend time with their grandparents. (*Id.,* at pp. 61–62, 72.)

The Supreme Court held that, as applied, the Washington statute infringed upon the parent's fundamental right to make decisions concerning the care, custody, and control of her children. The plurality opinion concluded that "there is a presumption that fit parents act in the best interests of their children," and when a fit parent's decision is judicially challenged, the trial court must give the parent's decision "special weight." (*Troxel, supra,* 530 U.S. at pp. 68–70.) As long as a "parent adequately cares for his or her children (i.e., is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children." (*Id.,* at pp. 68–69.) The "Due Process Clause does not permit a State to infringe on the fundamental right of parents to make childrearing decisions simply because a state judge believes a 'better' decision could be made" than the decision of a fit parent. (*Id,* at pp. 72–73.)

Four California cases have followed *Troxel* in holding that section 3102, covering visitation by grandparents and other relatives, was unconstitutionally applied by the trial courts. (*Zasueta v. Zasueta* (2002) 102 Cal.App.4th 1242, 1244 [126 Cal.Rptr.2d 245] [grandparents]; *Punsly v. Ho* (2001) 87

---

parent' as defined in Section 8512. [¶] (2) 'Stepparent' means a person who is a party to the marriage that is the subject of the proceeding, with respect to a minor child of the other party to the marriage."

Cal.App.4th 1099, 1101 [105 Cal.Rptr.2d 139] [same]; *Kyle O. v. Donald R.* (2000) 85 Cal.App.4th 848, 851 [102 Cal.Rptr.2d 476] [same]; *Herbst v. Swan* (2002) 102 Cal.App.4th 813, 814 [125 Cal.Rptr.2d 836] [sibling].) Although more narrowly drawn than the Washington statute at issue in *Troxel*, section 3102 also permits a visitation order based solely on a finding that visitation is in the child's best interest.[3] In all four cases, the appellate courts focused on the trial court's failure to apply a presumption in favor of the decision made by the parent and the absence of evidence to overcome the presumption that a fit parent acts in the child's best interest. (*Zasueta*, 102 Cal.App.4th at pp. 1254–1255; *Punsly*, 87 Cal.App.4th at pp. 1109–1111; *Kyle O.*, 85 Cal.App.4th pp. 863–864; *Herbst*, 102 Cal.App.4th at p. 820.)

The rationale of *Troxel* and the section 3102 cases apply to a proceeding involving stepparent visitation brought pursuant to section 3101. *Troxel* is based on the fundamental due process right of parents to control the upbringing of their children and neither makes nor permits any distinction based on the particular status of the nonparent in the child's family. (See *Zasueta v. Zasueta, supra*, 102 Cal.App.4th at p. 1252 [the " 'injection of the state's judgment into the affairs of a fit parent, not the details of the statute authorizing such an intrusion, fueled the *Troxel* opinion' "].) Neither section 3101 nor section 3102 expressly requires the court to presume that a parent's decision is in the best interest of the child, and section 3101, like section 3202, violates a parent's right to raise his or her children free of excessive judicial interference if applied without such a presumption.

Requiring a presumption in favor of parental decisions also furthers the "long-standing inclination of California courts to defer to the jointly expressed wishes of the parents except in the most unusual and extreme cases." (*In re Marriage of Gayden* (1991) 229 Cal.App.3d 1510, 1520 [280 Cal.Rptr. 862]; see also *Lopez v. Martinez* (2000) 85 Cal.App.4th 279, 286 [102 Cal.Rptr.2d 71].) Where natural parents are unified in opposition, nonparental visitation can be ordered only if such visitation is in the best interest of the child *and* denial of visitation would be detrimental to the child. (*Marriage of Gayden*, 229 Cal.App.4th at pp. 1517, 1520.)

Here, as in *Troxel* and the section 3102 cases, section 3101 was unconstitutionally applied because the record fails to show that the trial court applied

---

[3] Section 3102 provides in relevant part: "(a) If either parent of an unemancipated minor child is deceased, the children, siblings, parents, and grandparents of the deceased parent may be granted reasonable visitation with the child during the child's minority upon a finding that the visitation would be in the best interest of the minor child. [¶] (b) In granting visitation pursuant to this section to a person other than a grandparent of the child, the court shall consider the amount of personal contact between the person and the child before the application for the visitation order. . . ."

a presumption favoring the joint decision by David and Claudine that visiting James was not in the best interest of their child. (*Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069, 1084 [40 Cal.Rptr.2d 402, 892 P.2d 1145].) Although the trial court deferred to the parents in a preliminary order temporarily suspending James's visits with C.H., the record shows no such deference or presumption in the June 3, 2003, hearing or in the court's final order. In the absence of anything in the record to show that it accorded special weight to the parents' position, the trial court's ruling may have been based on "nothing more" than a disagreement between the court and the parents concerning C.H.'s best interests. (*Troxel, supra,* 530 U.S. at p. 68.)

Further, the decisional framework employed by the trial court does not permit us to infer that the court considered the presumption in reaching its decision. The court relied on its express finding that continued visitation with James was in C.H.'s best interest by balancing the interests of parent and stepparent on the apparent assumption that all interests could be accorded equal weight. The court stated that C.H. had a "third parent" and ordered visitation because it could not "figure out how else to split up the time between the three households."

■     Although section 3101 was unconstitutionally applied in this case, we do not conclude that section 3101 is facially unconstitutional. A statute will not be deemed unconstitutional on its face if the statute can be interpreted to conform to applicable constitutional requirements. (*Pacific Legal Foundation v. Brown* (1981) 29 Cal.3d 168, 180–181 [172 Cal.Rptr. 487, 624 P.2d 1215]; *Mounts v. Uyeda* (1991) 227 Cal.App.3d 111, 122 [277 Cal.Rptr. 730].)     ■     Consistent with the holdings of other courts in the section 3102 cases, we hold that section 3101 conforms to constitutional dictates if the decision to permit visitation applies the rebuttable presumption favoring parental decisions. As the *Troxel* plurality states, "[b]ecause much state-court adjudication in this context occurs on a case-by-case basis, we would be hesitant to hold that specific nonparental visitation statutes violate the Due Process Clause as a *per se* matter." (*Troxel,* 530 U.S. at p. 73, fn. omitted.)

Accordingly, we reverse the trial court's order, but we will remand for reconsideration based on application of the correct constitutional standard. The evidence relating to custody and visitation was contested and subject to more than one reasonable interpretation. We can only speculate as to how the trial court would have ruled had it applied the presumption favoring parental decisions. (See *Zasueta v. Zasueta, supra,* 102 Cal.App.4th at p. 1255; see also *CUNA Mutual Life Ins. Co. v. Los Angeles County Metropolitan Transportation Authority* (2003) 108 Cal.App.4th 382, 396–397 [133 Cal.Rptr.2d 470].)

On remand the trial court may rule on the evidence already submitted or take such further evidence as it may deem helpful. Nothing in this opinion should be construed as indicating how the trial court should ultimately rule.

[[/]]*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

We reverse and remand for further proceedings consistent with this opinion. Costs on appeal are awarded to appellant.

Yegan, Acting P. J., and Coffee, J., concurred.

---

*See footnote, *ante*, page 68.