[No. D036025. Fourth Dist., Div. One. Mar. 16, 2001.]

MARILYN PUNSLY et al., Plaintiffs and Respondents, v.
MANWAH HO, Defendant and Appellant.

**COUNSEL**

Luce, Forward, Hamilton & Scripps and Charles A. Bird for Defendant and Appellant.

Trope & Trope, Thomas Paine Dunlap and Donna Beck Weaver for Plaintiffs and Respondents.

**OPINION**

**HUFFMAN, J.**—Manwah Ho, the mother of Kathryn Punsly, appeals an order granting visitation to Kathryn's paternal grandparents, Marilyn and Bernard Punsly under Family Code[1] section 3102.[2] Manwah contends section 3102 is unconstitutional, as applied to her, in light of the recent United States Supreme Court case of *Troxel v. Granville* (2000) 530 U.S. 57 [120 S.Ct. 2054, 147 L.Ed.2d 49] (*Troxel*), a case concerning the constitutionality of a nonparental visitation statute, and *Troxel*'s appellate progeny. Manwah also contends the court's ancillary orders attached to the visitation order, independently, violated her constitutional due process rights. We conclude section 3102, as applied in this case, unconstitutionally infringed on Manwah's fundamental rights. Accordingly, we reverse the order in its entirety.

---

[1]All statutory references are to the Family Code unless otherwise specified.

[2]To avoid confusion, we refer to the parties by their first names and, where appropriate, collectively refer to Marilyn and Bernard as the Punslys.

## STATEMENT OF FACTS

Manwah married the Punslys' son, Richard, and they had one child, Kathryn, born in 1990. In 1992, Manwah and Richard divorced and while they shared joint legal and physical custody of Kathryn, Manwah assumed primary physical custody. Richard was diagnosed with bone cancer after the divorce and died in 1996.

Following Richard's death, the Punslys continued to regularly see Kathryn about every two months. Generally, Manwah drove Kathryn to Los Angeles for these visits, or the Punslys met them at a Newport Beach restaurant. Marilyn often spoke with Kathryn by telephone.

For a period of time in 1998, the Punslys did not see Kathryn. Consequently, the Punslys sought legal counsel to arrange a visitation schedule. Manwah objected to the nature and frequency of the Punslys' proposed schedule and offered a more limited one. The Punslys rejected this offer and petitioned the court under section 3102[3] to order Manwah to comply with their visitation schedule. In the meantime, the court compelled limited visitation with the Punslys and appointed independent counsel to represent Kathryn.

In May 2000, the court entered its order on the Punslys' petition, compelling visitation in San Diego on the third Sunday of alternate months. If Kathryn became ill and missed a visit, the order required Manwah to reschedule. It further ordered a telephone visit every Tuesday at 3:30 p.m. The court required that any modifications to this visitation schedule appear in writing. Additionally, the court entered ancillary orders. It compelled Manwah to regularly inform the Punslys about Kathryn's school schedule, teachers and counselors and to authorize the school to communicate directly with the Punslys about Kathryn. The order also mandated Manwah to encourage Kathryn to visit with the Punslys and enjoined all parties from making "disparaging remarks about another party" within Kathryn's hearing.

---

[3]Section 3102 states: "(a) *If either parent of an unemancipated minor child is deceased, the children, siblings, parents, and grandparents of the deceased parent may be granted reasonable visitation with the child during the child's minority upon a finding that the visitation would be in the best interest of the minor child.* [¶] (b) In granting visitation pursuant to this section to a person other than a grandparent of the child, the court shall consider the amount of personal contact between the person and the child before the application for the visitation order. [¶] (c) This section does not apply if the child has been adopted by a person other than a stepparent or grandparent of the child. Any visitation rights granted pursuant to this section before the adoption of the child automatically terminate if the child is adopted by a person other than a stepparent or grandparent of the child." (Italics added.)

### DISCUSSION

### I

*Discretion to Address the Constitutionality of Section 3102*

■ Preliminarily, we must address the Punslys' argument that we not exercise our discretion to hear Manwah's section 3102 constitutionality claim that she raises for the first time on appeal. California courts have, in their discretion, addressed constitutional issues for the first time on appeal, particularly when justice so requires. (See *People v. Norwood* (1972) 26 Cal.App.3d 148, 152 [103 Cal.Rptr. 7], citing *Silber v. United States* (1962) 370 U.S. 717, 718 [82 S.Ct. 1287, 1288, 8 L.Ed.2d 798]; *Hale v. Morgan* (1978) 22 Cal.3d 388, 394 [149 Cal.Rptr. 375, 584 P.2d 512]; *People v. Vera* (1997) 15 Cal.4th 269, 276-277 [62 Cal.Rptr.2d 754, 934 P.2d 1279].)

We disagree with the Punslys' assertion that circumstances of this case mitigate against exercising our discretion to hear this issue. First, the Punslys argue Manwah agreed to accept the recommendations of minor's counsel for visitation that the court adopted in its order. It seems a stretch of logic to say Manwah agreed, in a voluntary sense, to the court's interference with her fundamental parental rights. Rather, section 3102 and the court offered Manwah little choice but to comply, by accepting either the recommendations of minor's counsel, the Punslys' own proposed schedule, or further mediation.

Second, the Punslys contend Manwah should have raised the constitutionality issue of section 3102 in the trial court, as *Troxel, supra,* 530 U.S. 57 [120 S.Ct. 2054] did not establish new law or challenge any controlling California case law. The Supreme Court's decision to even hear *Troxel* indicates the importance of the public policy issues at stake in interpreting statutes granting visitation rights to nonparental parties. Until the court issued its decision on June 5, 2000, almost a month after the court entered its order in this case, it remained unclear as to how its ruling would affect, if at all, related statutes in other states. The effect of *Troxel* is now evident, and as the courts of other states properly exercised their discretion to examine their own visitation statutes in the light of *Troxel,* so shall we.

### II

*Constitutionality of Section 3102*

■ The beginning premise of any determination regarding the constitutionality of a statute is an assumption of its validity. " '[W]e resolve all

doubts in favor of its constitutionality, and we uphold it unless it is in clear and unquestionable conflict with the state or federal Constitutions. [Citation.]' " (*Clare v. State Bd. of Accountancy* (1992) 10 Cal.App.4th 294, 303 [12 Cal.Rptr.2d 481] (*Clare*), quoting *Mounts v. Uyeda* (1991) 227 Cal.App.3d 111, 122 [277 Cal.Rptr. 730].) A facial challenge to a statute's constitutionality requires a demonstration the provisions of the statute, despite careful interpretation, fatally collide with the Constitution. (*Clare, supra,* 10 Cal.App.4th at pp. 303-304.)

Nevertheless, a court may apply a facially sufficient statute in an unconstitutional manner. " 'The practical effect of holding a statute unconstitutional "as applied" is to prevent its future application in a similar context, but not to render it utterly inoperative.' " (*People v. Rodriguez* (1998) 66 Cal.App.4th 157, 167 [77 Cal.Rptr.2d 676].) We read Manwah's appeal to challenge the constitutionality of section 3102 as applied, and therefore, we only address that challenge.

III

*Troxel v. Granville*

In *Troxel, supra,* 530 U.S. 57 [120 S.Ct. 2054], the United States Supreme Court, in a plurality opinion, held a Washington statute that authorized nonparental visitation with a child unconstitutional as applied to the circumstances of the case before it.

The circumstances of *Troxel* bear a resemblance to those before us. A father died, leaving behind two children under the care and custody of their mother. The mother wished to limit the frequency of her children's visits with their paternal grandparents. The grandparents petitioned the court for increased visitation under section 26.10.160, subdivision (3) of the Revised Code of Washington. The court found more extensive visitation with the grandparents was in the best interests of the children and issued an order to enforce that visitation. (*Troxel, supra,* 530 U.S. at pp. 60-62 [120 S.Ct. at pp. 2057-2058].)

The import of the *Troxel* opinion is captured in a brief summary of its holding. The court prefaced its analysis of the Washington statute with its recognition that all 50 states have enacted grandparent visitation statutes in some form in an attempt to protect the vital role grandparents often play in children's lives. However, it noted "the State's recognition of an independent third-party interest in a child can place a substantial burden on the traditional parent-child relationship." (*Troxel, supra,* 530 U.S. at p. 64 [120 S.Ct. at p. 2059].)

With these competing interests in mind, the court directed its attention to the "sweeping breadth" of the Washington statute, focusing on the effect of the statute's language.[4] It stated, "[t]hus, in practical effect . . . a court can disregard and overturn *any* decision by a fit custodial parent concerning visitation whenever a third party affected by the decision files a visitation petition, based solely on the judge's determination of the child's best interests." (*Troxel, supra,* 530 U.S. at p. 57 [120 S.Ct. at p. 2061], italics in original.)

The court then addressed the facts of the case and made three important determinations. First, the court noted the grandparents did not allege, nor did the trial court find, that the mother was an unfit parent. This fact ran contrary to the presumption that fit parents act in the best interests of their children. (*Troxel, supra,* 530 U.S. at p. 58 [120 S.Ct. at p. 2061], citing *Parham v. J. R.* (1979) 442 U.S. 584, 602 [99 S.Ct. 2493, 2504, 61 L.Ed.2d 101].)

Second, the trial court in the case gave no special weight to the mother's determination of her children's best interests. Rather, the findings of the trial court indicated it effectively placed the burden on the mother to disprove a presumption that visitation with the grandparents was in her children's best interests. (*Troxel, supra,* 530 U.S. at p. 58 [120 S.Ct. at p. 2062].)

Third, the court emphasized the trial court's failure to give any weight to the fact the mother voluntarily agreed to allow visitation with her children's grandparents. The dispute at hand arose because the grandparents wanted more than the mother willingly offered. (*Troxel, supra,* 530 U.S. at p. 58 [120 S.Ct. at p. 2063].)

Based on these factors, the court determined the Washington statute, as applied, was unconstitutional. The court concluded "this case involve[d] nothing more than a simple disagreement between the Washington Superior Court and [the mother] concerning her children's best interest." (*Troxel, supra,* 530 U.S. at p. 58 [120 S.Ct. at p. 2063].) It further explained, "the Due Process Clause does not permit a State to infringe on the fundamental right of parents to make childrearing decisions simply because a state judge believes a 'better' decision could be made." (*Id.* at p. 58 [120 S.Ct. at p. 2064].)

---

[4]The Washington statute provides in pertinent part: "Any person may petition the court for visitation rights at any time including, but not limited to, custody proceedings. The court may order visitation rights for any person when visitation may serve the best interest of the child whether or not there has been any change of circumstances." (Wash. Rev. Code § 26.10.160, subd. (3).)

## IV

### *Troxel's Application to Section 3102*

First, we address the Punslys' contention that *Troxel's* analysis is inapplicable to section 3102. The Punslys primarily rely on the case of *In re G.P.C.* (Mo.Ct.App. 2000) 28 S.W.3d 357. They point to two key determinations made by the Missouri Court of Appeals that *Troxel, supra,* 530 U.S. 57 [120 S.Ct. 2054] did not render its nonparental visitation statute unconstitutional.[5] First, the court concluded the Missouri statute addresses only grandparents' rights to petition for visitation. It noted, "Consequently, Missouri's statute does not create the potential of subjecting parents' every decision to review at the behest of endless third parties." (*In re G.P.C., supra,* 28 S.W.3d at p. 364.) Second, the court cited with significance the Washington statute's grant of exclusive power in the judge to determine a child's best interests. Alternatively, the Missouri statute gives the judge power to appoint a guardian ad litem to assist in determining a grandparent's visitation rights. (*Ibid.*)

The Punslys analogize section 3102 to the statute examined in *In re G.P.C., supra,* 28 S.W.3d 357. They argue section 3102, like the Missouri statute, is not "breathtakingly broad," an infirmity found in the Washington statute. They note section 3102 only provides for nonparental visitation rights for the blood relatives of a deceased parent and therefore does not subject a custodial parent to endless litigation.[6] Similarly, they emphasize that in California, as in Missouri, trial courts have the power to appoint a guardian ad litem or minor's counsel, and the court exercised that power in this case.

The Punslys' arguments fail to persuade us.[7] The Punslys' emphasis on "the sweeping breadth" of Washington's statute is misplaced. Undoubtedly,

---

[5]As mentioned by Manwah, in *In re G.P.C.,* the Missouri Court of Appeals considered a statute previously determined constitutional by its state supreme court. (*In re G.P.C., supra,* 28 S.W.3d at pp. 361, 362-363, 365-366.)

[6]The Punslys also state section 3102 grants grandparents visitation rights that "are essentially derivative of those of the deceased parent, who presumably would have permitted visitation if he or she had survived." To avoid a facial constitutional challenge, we can only interpret section 3102 to confer upon the blood relatives of a deceased parent standing to seek court ordered visitation. "Nothing in the unfortunate circumstance of one biological parent's death affects the surviving parent's fundamental right to make parenting decisions concerning their child's contact with grandparents. (Cf. *Von Eiff v. Azicri* (Fla. 1998) 720 So.2d 510, 515 [statute similar to § 3102 was unconstitutional on its face because it violated the Florida Constitution's guarantee of privacy].)" (*Kyle O. v. Donald R.* (2000) 85 Cal.App.4th 848, 863 [102 Cal.Rptr.2d 476].)

[7]Other courts reached a similar conclusion with regard to their own nonparental visitation statutes, in particular a recent California case that examined section 3102 under facts

section 3102 provides greater restrictions on who may petition for visitation and when. However, similar to the Washington statute, section 3102 authorizes a court to grant such visitation to a child's grandparents solely upon finding it is in the best interests of the child. It is when a court exercises this discretion to substitute its own judgment of a child's best interests for that of a competent custodial parent, that a parent's fundamental rights are threatened. Further, this threat is not mitigated by the appointment of minor's counsel, whose similar function is to provide an independent assessment of a child's best interests. This injection of the state's judgment into the affairs of a fit parent, not the details of the statute authorizing such an intrusion, fueled the *Troxel* opinion. (*Troxel, supra,* 530 U.S. 57 [120 S.Ct. 2054].)

The importance of *Troxel, supra,* 530 U.S. 57 [120 S.Ct. 2054] for our analysis, therefore, requires us to examine the fundamental rights at issue in both cases. *Troxel* essentially affirmed the cardinal rule, as stated by the Supreme Court, " 'that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder.' " (*Lulay v. Lulay, supra,* 739 N.E.2d at p. 531, quoting *Prince v. Massachusetts* (1944) 321 U.S. 158, 166 [64 S.Ct. 438, 442, 88 L.Ed. 645].) "Encompassed within [this] well-established fundamental right of parents to raise their children is the right to determine with whom their children should associate. [Citation.]" (*Lulay v. Lulay, supra,* 739 N.E.2d at p. 531.)

A constitutional due process challenge based on an alleged infringement of this fundamental right requires the court to apply a strict scrutiny test. The statute at issue must serve a compelling state interest, and it must be narrowly tailored to serve that interest. (See *Lulay v. Lulay, supra,* 739 N.E.2d at p. 532.) In *Troxel, supra,* 530 U.S. 57 [120 S.Ct. 2054], the court held an order for nonparental visitation issued over the objection of a competent custodial parent does not withstand such a test when the court ignores a parent's voluntary efforts to arrange visitation and effectively places a burden on a parent to disprove a presumption that nonparental visitation is in his or her child's best interests. Using *Troxel*'s analysis as a guide, we now turn to the facts before us.[8]

## A. *Finding of Parental Unfitness*

The record here contains no allegation that Manwah was an unfit parent. The Punslys concede the absence of any issue regarding Manwah's

---

resembling those before us. (See *Kyle O. v. Donald R., supra,* 85 Cal.App.4th 848; see also *Brice v. Brice* (2000) 133 Md.App. 302 [754 A.2d 1132]; *Neal v. Lee* (2000) 2000 Okla. 90 [14 P.3d 547]; *Lulay v. Lulay* (2000) 193 Ill.2d 455 [250 Ill.Dec. 758, 739 N.E.2d 521].)

[8]We decline to address here whether the presence of all of these circumstances is required to demonstrate an unconstitutional application of section 3102.

competence as a parent, aside from her decisions regarding their visitation. Further, reports by Kathryn's counsel, the family court services counselor and Kathryn's school counselor indicate Manwah and Kathryn share a close relationship marked by mutual support, love, and concern. Additionally, Kathryn appears well adjusted and functions exceptionally well at school and home.

## B. *Voluntary Visitation Schedule*

The Punslys contend the analysis in *Troxel, supra,* 530 U.S. 57 [120 S.Ct. 2054] does not apply here because, unlike the grandparents in *Troxel,* they alleged Manwah sought to entirely cut off visitation. They argue that between October 1998 and March 1999, they were not allowed to visit Kathryn and visits resumed only because they sought counsel. They suggest Manwah's request that the court not order visitation, and that visitation only take place if she and Kathryn agreed, indicated visitation would not occur without court intervention.

We construe *Troxel*'s emphasis on a parent's voluntary efforts for visitation to mean that before a court may intervene, the parent must be given an opportunity to voluntarily negotiate a visitation plan. (*Troxel, supra,* 530 U.S. 57 [120 S.Ct. 2054].) Consequently, it is irrelevant when or why Manwah proposed her own visitation schedule. The important consideration here is that she did.

The record shows Manwah agreed to voluntarily arrange visitation on a more limited basis both before and after the Punslys petitioned the court for visitation. The Punslys include this fact in their petition. Also, the Family Court Services counselor noted in a preliminary report that Manwah disagreed with any court ordered visitation but claimed the Punslys were welcome to visit in San Diego once every three months on Sundays and to call Kathryn. Manwah indicated one reason for this schedule was to minimize the long drives to Los Angeles and to require more of an effort by the Punslys to visit Kathryn in San Diego. The record indicates the Punslys saw Kathryn in San Diego on only one occasion prior to the filing of the Punslys' section 3102 petition. Additionally, a report by Kathryn's counsel stated Manwah expressed no desire that Kathryn not see her grandparents nor did she discount the value such contact could have for Kathryn.

## C. *Trial Court's Considerations Regarding Child's Best Interest*

The Punslys also contend the trial court did not place a burden on Manwah to disprove a presumption that visitation with them was in Kathryn's best interests because no litigation regarding visitation occurred.

Instead, they assert the parties simply asked the court to determine whether the recommendations of minor's counsel for visitation, as accepted by Manwah, were in Kathryn's best interests. We disagree.

Manwah's constitutional rights as a custodial parent became implicated when the Punslys filed their petition under section 3102. (See *Lulay v. Lulay, supra,* 739 N.E.2d at pp. 531-532.) She hired an attorney and presented evidence to the court defending her decisions regarding Kathryn's visitation with the Punslys. She requested that the court not interfere. "I have been a very good mother to Kathryn and have made good decisions in her best interest. I ask the court to continue to allow me to do so without interference."

But the court did interfere despite her objections. It ordered interim visitation and appointed minor's counsel. The court then held a hearing during which it finalized a visitation schedule. Manwah was faced with the option of either accepting a visitation schedule or continuing mediation. During the hearing, the Punslys' counsel stated: "At this point, the [Punslys] see what the recommendations are, what the position is, and they will back off." Manwah's counsel then said, "My point was that we wanted to avoid continuing to litigate this matter."[9]

Further, we agree with the Punslys that the court was called upon to determine the best interests of Kathryn. However, in making this determination, the court failed to apply the proper presumptions.

First, as noted previously, a presumption exists that fit parents act in the best interests of their children. (*Troxel, supra,* 530 U.S. at p. 67 [120 S.Ct. at p. 2061], citing *Parham v. J.R., supra,* 442 U.S. at p. 602 [99 S.Ct. at p. 2504].) Here, the fitness of Manwah as a parent is unquestioned. Therefore, the court should have applied a presumption that her decision regarding visitation with the Punslys was in Kathryn's best interests. This decision included not only less visitation but also visitation that permitted flexibility around Kathryn's activities and did not threaten contempt proceedings if she or Kathryn chose not to visit with the Punslys.

Instead, the court dismissed Manwah's concerns that formed the basis of Manwah's desire to limit visitation with the Punslys. For example, Manwah expressed concern regarding the Punslys' use of inappropriate language

---

[9]This discussion related to whether the parties would accept the recommendations of minor's counsel that included proposed mediation. Manwah objected to further mediation and the Punslys decided not to pursue the matter further. The court stated it would not order such mediation if either party objected to it.

around Kathryn.[10] The court responded by noting, "It does concern me that the Punslys . . . have probably raised their voice and used inappropriate language in front of this child. I also think that either the child alone or . . . the mother have made a much bigger deal out of it than needs to be made. [¶] . . . [I]f that's the way the [Punslys] occasionally speak, then that's the way they speak. . . . [M]ost children . . . might even think it was funny under some circumstances."[11]

The court also recognized the absence of a strong bond between Kathryn and the Punslys but suggested court interference was necessary to establish such a bond. The court remarked, "The problem that I see is not there is not a wonderful relationship between [Kathryn] and the [Punslys]. [¶] . . . [¶] . . . It's good to have a nice solid bond between the mother and the child. I don't think it is appropriate, though, for it to go to the extent that it excludes other bonds with other people that are significant in her life. . . . [¶] . . . [¶] I don't see any problem with the [Punslys] being similar to a Disneyland dad . . . . I am a grandparent. That seems to be what we do for grandchildren."[12]

On these facts alone, we hold the court violated Manwah's due process rights as a fit custodial parent to make decisions regarding her daughter.

## V

### Conclusion

In light of Manwah's fitness as a parent and her willingness to voluntarily schedule visitation, in combination with the trial court's erroneous application of a presumption that visitation with the Punslys was in Kathryn's best interests, we conclude the application of section 3102 over Manwah's objections unduly infringed upon her fundamental parenting rights. (*Troxel, supra,* 530 U.S. at pp. 69-70 [120 S.Ct. at pp. 2062-2063].) For this reason, the order must be reversed. Remand for further proceedings on the question of visitation is inappropriate. (*Id.* at p. 75 [120 S.Ct. at p. 2065] [where it is

---

[10]Manwah raised others issues as well, including her concern the Punslys did not accept Kathryn's biracial background and their alleged insensitivity to Kathryn's needs, wants and interests. The hearing transcripts do not contain any discussion regarding these issues.

[11]We also note the report of Kathryn's counsel indicated the effect this behavior had on Kathryn. It stated: "[Kathryn is] upset when her grandmother yells and curses during telephone conversations with her and her mother."

[12]The report of Kathryn's counsel also suggests the presence of a strained relationship between Kathryn and the Punslys. It notes Kathryn is "in general not comfortable when in her grandparents company." Further, "Kathryn's interaction with [the Punslys] would be fairly described as free flowing from time to time but overall rather stilted, reacting to them more as 'visitors' rather than 'family.' "

apparent that a visitation order violated the Constitution, the court should not force the parties into additional litigation].)[13]

DISPOSITION

The judgment is reversed, and the matter is remanded to the trial court with directions to vacate its order granting the Punslys' request for a visitation schedule, and to enter a new order denying that request. Given the Punslys' concession on the petition for writ of supersedeas, the visitation schedule shall be stayed immediately. The Punslys shall pay Manwah's costs on appeal.

Kremer, P. J., and Haller, J., concurred.

---

[13]In light of our conclusion regarding the underlying visitation order and our disposition of this case we decline to address the validity of the ancillary orders.