[No. D041602. Fourth Dist., Div. One. Dec. 10, 2003.]

In re the Marriage of RUSSELL ROSS and REBECCA KELLEY.
RUSSELL ROSS, Respondent, v.
REBECCA KELLEY, Respondent;
JAMES DUCKHAM et al., Appellants.

**COUNSEL**

Stephen Temko for Appellants.

No appearance for Respondents.

Mary Elizabeth Handy, under appointment by the Court of Appeal, for Minor.

**OPINION**

**NARES, Acting P. J.**—In this grandparent visitation case, appellants James and Sharon Duckham (together the Duckhams) are the paternal grandparents of Cassandra, a minor, who lives with her father, Russell Ross (Father). After they joined Father's paternity action as third party claimants, the court issued an order granting the Duckhams liberal visitation with Cassandra under a stipulation they entered into with Father and Cassandra's mother, Rebecca Kelley (Mother).

At a later hearing on an order to show cause (OSC) to modify Mother's visitation rights, issued at Father's request, the court decided sua sponte that under recent case law rendered by the United States Supreme Court and this appellate court, it no longer had power to order grandparent visitation. The

court terminated the Duckhams' visitation with Cassandra without giving the parties an opportunity to brief the issue. Father and the Duckhams jointly filed a motion for reconsideration of the court's order terminating the Duckhams' visitation. The court denied the motion.

The Duckhams appeal from both the order terminating their visitation with Cassandra and the order denying their motion for reconsideration. They contend (1) the court had no jurisdiction to terminate their stipulated visitation rights without giving all parties notice and an opportunity to be heard; (2) the court's belief that it had no power to order grandparent visitation, and the court's order terminating their visitation, were contrary to law; and (3) the court abused its discretion in denying the motion for reconsideration. Neither Father nor Mother has responded to this appeal, and counsel for Cassandra urges that the orders in question be reversed.

We reverse the order terminating grandparent visitation and hold that the court abused its discretion by denying the Duckhams stipulated grandparent visitation with Cassandra based upon the erroneous legal conclusion that, under *Troxel v. Granville* (2000) 530 U.S. 57 [147 L.Ed.2d 49, 120 S.Ct. 2054] (*Troxel*) and this court's decision in *Punsly v. Ho* (2001) 87 Cal.App.4th 1099 [105 Cal.Rptr.2d 139] (*Punsly*), it had no power to order such visitation. The appeal from the denial of the motion for reconsideration is moot.

## FACTUAL BACKGROUND

Cassandra was born in November 1995 and is now eight years of age. She moved with Father to Spokane, Washington, in August 2001. Mother remained in San Diego where she lived near the Duckhams. In October 2002, the Duckhams planned to move to Sacramento in connection with their state employment. Mother has a history of alcohol abuse and of driving with a suspended license.

## PROCEDURAL BACKGROUND

*Father's Paternity Complaint and the Duckhams' Joinder*

In November 1996, Father filed a complaint against Mother seeking to establish his parental relationship with Cassandra, who was living with Mother. Father requested joint legal and physical custody of Cassandra, and reasonable visitation.

Mother answered the complaint and requested joint legal and primary physical custody of Cassandra and visitation by Father every Wednesday

evening and one day on alternate weekends. Under a stipulated order, the Duckhams were joined to the paternity action as third party claimants.

*Duckhams' Stipulated Visitation with Cassandra*

In February 2000, by stipulation of the parties, the court ordered that the Duckhams would have visitation with Cassandra one full weekend and two half weekends each month, two weekday afternoons per month, up to two weeks each summer, and December 26 each year.

In March of that year, based upon an ex parte application by Cassandra's former counsel, the court ordered that Mother's visitation with Cassandra be *supervised.*

On December 14, 2001, the court issued an order by stipulation of the parties (the December 2001 stipulated order), ordering (among other things) the following custody and visitation arrangements: (1) Father and Mother would have joint legal custody of Cassandra; (2) Father would be Cassandra's primary custodial parent; (3) Father would be allowed to relocate to Spokane, Washington, with Cassandra; (4) Mother would have *unsupervised* visitation with Cassandra subject to passing a drug test on five occasions; (5) Mother and the Duckhams would share visitation with Cassandra over the Christmas vacation, with the Duckhams having approximately two days and Father and Mother each having approximately half of the remaining period; (6) Father and Mother would share approximately equal visitation during spring break, and Cassandra would spend approximately two days with the Duckhams during that period at least on an alternate year basis; (7) the Duckhams would have visitation for the first four weeks of summer vacation, and Mother would have visitation for the remainder of the summer vacation; (8) Mother and the Duckhams would each have weekend visitation in Spokane once a month; and (9) Mother and the Duckhams would each have telephone visitation with Cassandra at least twice each week.

*Father's OSC for Modification of Mother's Visitation and for Return of Cassandra*

On August 13, 2002, during Mother's summer visitation with Cassandra, Father applied for issuance of an OSC for modification of Mother's visitation rights from unsupervised to supervised visitation, and for the return of Cassandra to him immediately, rather than on August 23 as scheduled. In his supporting declaration, Father stated that he had been Cassandra's primary custodial parent since August 1998; that in March 2000 Mother's visitation with Cassandra was ordered to be supervised as a result of a hospital diagnosis that Mother had physically abused Cassandra; and at the October

2001 hearing in which he had stipulated to unsupervised visitation, he was not represented by counsel and was "bullied" by Mother's former counsel. Father stated that Mother picked up Cassandra for summer visitation on July 16, 2002; she did not return his phone calls for nearly two weeks; and her brother informed him by telephone that he (Mother's brother) had Cassandra, and he was going to take her to Mammoth through August 10 without Mother.

Father also asserted in his OSC supporting declaration that he had recently learned that Mother had been arrested and convicted of drunk driving in March 1999; seven arrest warrants had been issued against her between July 1999 and July 2001, all of which were related to her drunk driving conviction; the court had withdrawn her right to complete the first conviction program that would have enabled her to qualify for reinstatement of her driver's license, which had been suspended in March 1999; and in March 2002, Mother was issued a moving violation citation for driving with a suspended license and speeding at 100 miles per hour.

The Duckhams supported Father's OSC application by submitting their own joint declaration in which they expressed their fear that Mother would jeopardize Cassandra's safety and well being.

That same day, August 13, the court issued temporary orders giving to Father temporary physical custody of Cassandra subject to Mother's right to supervised visitation and specifying Cassandra was to return to Father in Washington by August 23. The court also ordered the parties to meet with a family court services counselor in October 2002.

Two days later, Mother applied ex parte for an order returning Cassandra to her, claiming that Father had wrongfully taken custody of Cassandra on August 13. The court issued an ex parte order that temporary custody of Cassandra remain with Mother until she turned Cassandra over to Father at the Spokane Airport on August 22.

In October 2002, Father filed a supplemental OSC declaration asking that Mother's visitation with Cassandra be supervised because his parents were moving to Northern California and would no longer be in San Diego to assist in looking out for Cassandra's best interests; he had been having problems with Mother's visitation with Cassandra since December 2001, when Mother went off supervised visitation; Mother was on probation for three years for driving without a valid license and for driving 100 miles per hour; and Mother was continuing to drive Cassandra long distances without a valid license.

*Family Court Services (FCS) Mediation and FCS Report
Recommendations*

In October 2002, the parties participated in a court-ordered mediation conference with an FCS counselor. The counselor's report (the FCS report) noted that Father and the Duckhams had requested that Cassandra not visit Mother in San Diego until Mother demonstrated more responsible parenting behaviors and provided proof of having a valid driver's license; and Mother had requested that she be able to have her previously scheduled vacation times with Cassandra in San Diego, one week during the winter break, five days on alternate spring breaks, and five weeks each summer.

In the FCS report, the counselor opined that Mother showed poor co-parenting skills and failed to demonstrate sufficient responsibility as a parent, as indicated by her having driven Cassandra with a suspended license and having sent her on a 10-day trip without knowing the itinerary or being able to reach her. The FCS report recommended that (1) Cassandra's primary residence be with Father in Spokane; (2) Mother have visitation with Cassandra in Spokane for up to 48 hours during one weekend each month, plus three days over Easter weekend; (3) Cassandra be with the Duckhams for four weeks each summer and additional times as agreed upon by Father and the Duckhams, provided the visitation not conflict with visits by Mother already scheduled with Father; and (4) any additional sharing of Cassandra or changes in the parenting plan be by mutual agreement of the parties. The counselor found that Cassandra spent 91 percent of her time with Father; 7 percent of her time with Mother, and 2 percent of her time with the Duckhams.

*OSC Hearing and Order Denying Grandparent Visitation, and the
Court's Formal December 27, 2002 Order*

At the OSC hearing held on November 7, 2002 (the OSC hearing), Mother objected to the recommendations in the FCS report that restricted her visitation with Cassandra to Spokane. With an exception not relevant to this appeal, counsel for the Duckhams and Father asked the court to follow the recommendations in the FCS report.

None of the parties objected to the recommendations in the FCS report that Cassandra visit with the Duckhams for four weeks each summer and addi-tional times as agreed upon by Father and the Duckhams. Indeed, as already discussed, the parties had previously stipulated to grandparent visitation.

The court agreed with the FCS counselor's opinion that Mother had demonstrated poor coparenting skills and had failed to demonstrate sufficient

responsibility as a parent, as shown by the fact that she had driven Cassandra while her license was suspended, and she had sent Cassandra on a 10-day trip without knowing the itinerary or being able to reach Cassandra. The court also agreed with the counselor that it was premature for Mother to have extended parenting time with Cassandra in San Diego and that Mother's visitation with Cassandra should be in Spokane.

The court issued an order adopting the recommendation in the FCS report with certain modifications. Of importance to this appeal, the court sua sponte deleted recommendation No. 6 of the FCS report, which would have provided for Cassandra's visitation with the Duckhams for four weeks during the summer. That recommendation, which consisted of two parts (recommendations Nos. 6.a and 6.b), provided in full: "6. *The child shall be with the paternal grandparents* as follows: [¶] a. *Four weeks each summer*, the specific dates shall be arranged by mutual agreement between the father and grandparents. The father shall notify the mother in advance as to the dates of the grandparents' visitation, so the mother may arrange her weekend visits with the child accordingly. [¶] b. *At other times as agreed-upon between the father and the paternal grandparents*, provided that the grandparents' visits do not conflict with visits the mother has already scheduled with the father." (Italics added.)

The court explained its reasoning for rejecting recommendation No. 6 and terminating grandparent visitation with Cassandra: "The law has changed. I really can't order grandparent visitation. Since [the Duckhams] are related to [Father], I'm sure [Father] will give them time with [Cassandra]."

The court also ordered the deletion of the phrase "or paternal grandparents" from the first line of recommendation No. 7 in the FCS report, which concerned the Duckhams' out-of-town travel with Cassandra. That recommendation provided: "7. When the father *or paternal grandparents* wish to travel with the child outside the city of their residences for overnight or longer during their parenting times, the other parties must be given prior notice of the date and time, destination and an emergency telephone number." (Italics added.)

Counsel for Father and the Duckhams argued that there was an existing order providing for the Duckhams' visitation with Cassandra, and Father agreed with that order. The court responded that Father could allow the Duckhams to visit with Cassandra, but under recent decisions by the United

States Supreme Court and state courts the court could not order grandparent visitation.[1] The court explained that "Judge [Thomas] Ashworth [III] has been overruled on two cases in which he ordered grandparent visitation. So, even though the circumstance may be a tad different, I think our appellate courts have spoken loud and clear as far as the court's inability to do that, and so, that's why I'm not ordering [grandparent visitation]."

On December 27, 2002, the court entered a formal findings and order after hearing (the December 27 order), which deleted both recommendation No. 6.a (discussed, *ante*, that would have allowed the Duckhams to have four weeks of visitation with Cassandra during the summer), and the phrase "or paternal grandparents" in recommendation No. 7 (discussed, *ante*), but inexplicably did not delete recommendation No. 6.b (discussed, *ante*) that would have allowed the Duckhams to have visitation with Cassandra "[a]t other times as agreed-upon" between Father and the Duckhams that did not conflict with Mother's scheduled visitation, as the court had ordered at the OSC hearing. Paragraph No. 2 of the December 27 order stated that "[a]ll other orders not modified herein shall remain in full force and effect."

### Order Denying the Duckhams' Motion for Reconsideration and the Duckhams' Appeal

Father and the Duckhams jointly filed a motion (the motion for reconsideration) asking the court to reconsider, modify or vacate its OSC order deleting the recommendations of the FCS report that related to grandparent visitation. In his supporting declaration, John J. McCabe, Jr., counsel for Father and the Duckhams, stated that an order in effect at the time of the OSC hearing—the December 2001 stipulated order (discussed, *ante*)—had provided specific visitation and child sharing to the Duckhams, and neither Mother, Father, nor the Duckhams had objected to that visitation.

In support of their motion, Father and the Duckhams argued that (1) the subject of the OSC hearing was the child-sharing arrangements between Mother and Father; (2) "[n]either parent requested any modification of the grandparent/claimant visitation rights"; (3) the issue of the Duckhams' visitation rights was not raised by the parties at the OSC hearing; (4) the court on its own initiative deleted the provisions for the Duckhams' visitation from the recommendations in the FCS report; (5) and the court relied on the United States Supreme Court's decision in *Troxel, supra,* 530 U.S. 57, and this court's decision in *Punsly, supra,* 87 Cal.App.4th 1099, neither of which

---

[1] The court stated: "[T]here may have been an existing order, but we have subsequent cases . . . coming from the U.S. Supreme Court as well as our superior court, and our appellate courts. And so, I do not feel that . . . I can order grandparent visitation. I'm sorry."

applied in the instant case because those decisions involved cases in which there were objections to grandparent visitation, whereas here there were no such objections.

In a minute order issued on January 8, 2003 (the January 8 order), the court denied the motion for reconsideration. The court noted, "[a]s an aside, if the parents want the [Duckhams] to visit with [Cassandra], they can certainly allow it." The Duckhams thereafter filed a timely appeal from both the portions of the December 27 order that terminated grandparent visitation, and the January 8 order denying their motion for reconsideration.

## DISCUSSION

The Duckhams appeal two orders: (1) the December 27 order to the extent it was based on the court's sua sponte rulings at the OSC hearing that terminated the Duckhams' stipulated visitation rights with their granddaughter, Cassandra; and (2) the January 8 order denying their motion for reconsideration, in which they asked the court to reconsider, modify or vacate its OCS rulings deleting the recommendations of the FCS report that would have given stipulated grandparent visitation rights to the Duckhams. The Duckhams contend that (1) the court had no jurisdiction to terminate their stipulated visitation rights without giving all parties notice and an opportunity to be heard; (2) the court's belief that it had no power to order grandparent visitation and the court's order terminating their visitation were contrary to law; and (3) the court abused its discretion in denying the motion for reconsideration. Neither Father nor Mother has responded to this appeal, and counsel for their eight-year-old daughter, Cassandra, supports the Duckhams' claim that the orders in question must be reversed.

The record shows that at the OSC hearing, which Father requested to seek (among other things) modification of the existing December 2001 stipulated visitation order to require that Mother's visitation with Cassandra be supervised, none of the parties objected to, or even referred to, the FCS report recommendations concerning the agreed-upon grandparent visitation.[2] After hearing argument, the court sua sponte rejected recommendations Nos. 6 and 7 of the FCS report (see fn. 2, *ante*), thereby terminating the Duckhams' stipulated grandparent visitation rights. When counsel for Father and the Duckhams argued there was an existing order providing for the Duckhams' visitation with Cassandra, the court responded that "there may have been an existing order, but we have subsequent cases . . . coming from the U.S. Supreme Court as well as our superior court, and our appellate courts. And so, I do not feel that . . . I can order grandparent visitation."

---

[2] Recommendation No. 6 would have given the Duckhams the right to have visitation with Cassandra for four weeks during the summer, and recommendation No. 7 would have given them a conditional right to out-of-town travel with Cassandra.

In terminating grandparent visitation, the court relied upon the United States Supreme Court's decision in *Troxel, supra,* 530 U.S. 57, and this court's decisions in *Punsly, supra,* 87 Cal.App.4th 1099, and *In re Marriage of Harris* (2001) 92 Cal.App.4th 499 [112 Cal.Rptr.2d 127] (review granted Jan. 3, 2002, S101836) (*Harris*).[3] It is apparent from the court's comments during the OSC hearing that the court assumed that under the *Troxel, Punsly* and *Harris* decisions, there is a per se prohibition against ordering grandparent visitation. As we shall explain, however, neither *Troxel* nor *Punsly* holds that such a prohibition exists.

In *Troxel*, the United States Supreme Court held in a plurality opinion that a State of Washington statute that authorized nonparental visitation with a child, *as applied* to the circumstances in that case, exceeded the bounds of the due process clause of the Fourteenth Amendment to the United States Constitution and unconstitutionally infringed on the mother's fundamental rights as a parent. (*Troxel, supra,* 530 U.S. at pp. 67–68, 73.) The Supreme Court rested its decision on the "sweeping breadth" of the statute in question and "the application of that broad, unlimited power in this case," and reasoned that because the fitness of the mother as a parent was unquestioned, the trial court should have applied a presumption that her decision to limit visitation of her children with their paternal grandparents was in the children's best interests. (*Id.* at pp. 68–69, 73.)

Here, the court misinterpreted the holding in *Troxel* and thus abused its discretion by resting on that decision its refusal to grant to the Duckhams the grandparent visitation rights that both Mother and Father had accepted. Far from holding that there is a per se prohibition against ordering grandparent visitation, particularly in a case such as the one here in which the parents have stipulated to such visitation, the plurality opinion in *Troxel* indicated that courts should be cautious before declaring nonparental visitation unconstitutional as a per se matter: "[T]he constitutionality of any standard for awarding visitation turns on the specific manner in which that standard is applied and . . . the constitutional protections in this area are best 'elaborated with care.' [Citation.] Because much state-court adjudication in this context occurs on a case-by-case basis, we would be hesitant to hold that specific nonparental visitation statutes violate the Due Process Clause as a *per se* matter." (*Troxel, supra,* 530 U.S. at p. 73, fn. omitted.)

In *Punsly, supra,* 87 Cal.App.4th 1099, this court held that California's statute authorizing reasonable grandparent visitation with a minor child of a deceased parent upon a finding that such visitation would be in the best

---

[3] In the memorandum of points and authorities submitted in support of their motion for reconsideration, the Duckhams did not make reference to our *Harris* decision, but argued that *Troxel* and *Punsly* were not controlling.

interest of the child (Fam. Code, § 3102)[4] was not facially invalid under the federal and state Constitutions, but the application of that statute to the circumstances in that case violated the mother's due process rights because the trial court, like the trial court in *Troxel, supra,* 530 U.S. 57, failed to apply a presumption that the decision of the mother, a fit parent, regarding her child's visitation with the paternal grandparents was in the child's best interests. (*Punsly, supra,* 87 Cal.App.4th at pp. 1109–1110.) In *Punsly,* we did not hold that a trial court is per se prohibited from granting grandparent visitation. We note that *Punsly* is also factually distinguishable in that the mother in that case objected to the paternal grandparents' request for visitation (*id.* at p. 1102), whereas here, as already discussed, the parties stipulated to the grandparent visitation that the court refused to grant to the Duckhams based on the court's misunderstanding as to relevant case law.

■ We are aware of no statutory or decisional authority that prohibits a trial court from ordering grandparent visitation with a child based upon the stipulation of the parents, and, on the circumstances presented in this case, we do not perceive that such an order would contravene any public policy. We conclude that the court abused its discretion by denying the Duckhams stipulated grandparent visitation with Cassandra based upon an erroneous legal conclusion that under *Troxel, supra,* 530 U.S. 57 and *Punsly, supra,* 87 Cal.App.4th 1099, it had no power to order such visitation. Thus the portions of the December 27 order that terminated the Duckhams' stipulated visitation rights must be reversed. Reversal is also required because the court terminated sua sponte the Duckhams' stipulated visitation rights without first giving the parties notice and an opportunity to brief the issue of whether the court on its own motion should terminate those rights. In light of the foregoing conclusions, we need not, and do not, reach the merits of the Duckhams' claim that the court abused its discretion by denying their motion for reconsideration.

## DISPOSITION

The portions of the December 27 order that terminated the Duckhams' stipulated visitation rights are reversed. In all other respects, the order is

---

[4] Family Code section 3102 provides: "(a) *If either parent of an unemancipated minor child is deceased, the* children, siblings, parents, and *grandparents of the deceased parent may be granted reasonable visitation with the child during the child's minority upon a finding that the visitation would be in the best interest of the minor child.* [¶] (b) In granting visitation pursuant to this section to a person other than a grandparent of the child, the court shall consider the amount of personal contact between the person and the child before the application for the visitation order. [¶] (c) This section does not apply if the child has been adopted by a person other than a stepparent or grandparent of the child. Any visitation rights granted pursuant to this section before the adoption of the child automatically terminate if the child is adopted by a person other than a stepparent or grandparent of the child." (Italics added.)

affirmed. The matter is remanded to the trial court with directions to vacate the portions of the December 27 order that terminated the Duckhams' stipulated visitation rights (¶¶ 1.B & 1.C at p. 2), and to enter a new order that adopts in full recommendations Nos. 6 and 7 set forth in the FCS report. The appeal from the court's denial of the motion for reconsideration is moot. Each party to bear its own costs on appeal.

McIntyre, J., and O'Rourke, J., concurred.