Filed 11/15/13  In re Kylee H. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re KYLEE H., a Person Coming Under the Juvenile Court Law. | |
| | D063831 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. NJ14484) |
| v. | |
| KATHRYN H., | |
| Defendant and Appellant; | |
| MARGARET H. et al., | |
| Movants and Respondents. | |

APPEAL from a judgment of the Superior Court of San Diego County, Michael J. Imhoff, Commissioner.  Affirmed.

Michele Anne Cella, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Dana C. Shoffner, Deputy County Counsel, for Plaintiff and Respondent.

Patricia K. Saucier for Movants and Respondents.

Valerie N. Lankford, under appointment by the Court of Appeal, for Minor.

Kathryn H. appeals a juvenile court judgment terminating jurisdiction of her minor daughter, Kylee H., and issuing custody and visitation orders. Kathryn contends the court violated her substantive due process right to custody and control of Kylee by issuing a grandparent visitation order. She further contends the family court, not the juvenile court, is the proper forum for issuing a visitation order. We affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Kylee was born in October 2003 to Kathryn and Duke A. Kylee began living with her maternal grandparents when she was seven months old, and returned to Kathryn's care when she was five and one-half years old. Kathryn married Roger S. in 2010, and they had a turbulent relationship.

In May 2011, the San Diego County Health and Human Services Agency (Agency) received a referral of three recent domestic violence incidents between Kathryn and Roger. During one of these incidents, Kylee was in the car and saw Kathryn punch and slap Roger while he was driving. When the car stopped, Kathryn screamed at Kylee, "Get out, I hate you, run away." Kathryn and Roger continued to fight, and Kathryn threatened to kill herself and Kylee. Kylee heard the threat, causing her to be sad and scared. Following this incident, she returned to live with the maternal grandparents.

Kathryn and Roger had a history of domestic violence and arrests. Kylee told the social worker she did not like being in Kathryn's home and preferred to live with the maternal grandparents because there was "no screaming and yelling" in their home. She also said she

2

was afraid of Roger. School personnel noticed Kylee seemed calmer and happier after she began living with the maternal grandparents.

Agency filed a petition in the juvenile court under Welfare and Institutions Code[1] section 300, subdivision (b), alleging Kylee was at substantial risk of harm as a result of the domestic violence and Kathryn's threats to kill Kylee.[2] The court detained Kylee with the maternal grandparents and granted their request for de facto parent status.

At the jurisdiction and disposition hearing, the court sustained the allegations of the petition, declared Kylee a dependent, removed her from parental custody, and placed her with the maternal grandparents. The court ordered reunification services for Kathryn, including supervised visits with Kylee.

During the next six months, Kathryn participated in individual therapy, domestic violence treatment and in-home parenting classes. She progressed to unsupervised visits with Kylee. At the six-month review hearing, the court continued Kylee as a dependent, continued her placement with the maternal grandparents, and ordered six more months of services for Kathryn.

By the 12-month hearing, Kathryn had completed individual therapy and was still participating in other services. Kylee had begun an extended 60-day visit with Kathryn and Roger. The maternal grandparents requested overnight visits twice a month with Kylee. Kathryn opposed this schedule, arguing the family needed time to bond and Kylee needed time to "settle in." The court set the visitation issue for a special hearing and made an interim order

---

[1] Statutory references are to the Welfare and Institutions Code unless otherwise specified.

[2] An allegation under section 300, subdivision (a), was later dismissed.

for the maternal grandparents to have overnight visits with Kylee on the first and third weekends of the month from noon on Saturday until 4:00 p.m. on Sunday. The court placed Kylee with Kathryn but retained jurisdiction.

The social worker met with Kylee twice to discuss her visits with the maternal grandparents. Kylee reported she enjoyed visits with them and liked seeing her friends who lived nearby. She liked overnight visits and wanted them to continue.

Kathryn preferred to have Kylee visit the maternal grandparents from 9:00 a.m. to 9:00 p.m. on Saturdays so Kylee could go to church with the family on Sundays, have time to complete her homework, and prepare for the week. The maternal grandparents believed their proposed visitation schedule—twice a month, from noon on Saturday to 4:00 p.m. on Sunday—would give Kylee time to spend with them, as well as with her family and friends. At the special hearing on visitation, the court continued the twice-a-month visitation schedule between Kylee and the maternal grandparents.

In its report for the family maintenance review hearing, the social worker noted Kathryn had completed most of her services and had learned techniques to help eliminate the protective issues. Kathryn did, however, have a lapse in medication compliance that caused some concerns about her anger management. Further, Kathryn acknowledged she and Roger continued to argue, but said they avoided exposing Kylee to their arguments. Following one argument, Kylee said to Roger, "mom is sad because she thinks you are leaving her." Nevertheless, Agency recommended the court terminate jurisdiction of Kylee.

At the family maintenance review hearing, Kathryn reiterated her opposition to continuing the visitation order for the maternal grandparents after the court terminated

jurisdiction. Kathryn argued she did not oppose visits for the maternal grandparents, but only the existence of a court order for visitation. The court set a contested hearing on the visitation issue.

At the contested hearing, the court terminated jurisdiction, ordered joint legal custody of Kylee to Kathryn and Duke, with physical custody to Kathryn, and continued visitation for the maternal grandparents as previously ordered.[3]

DISCUSSION

I

Kathryn contends the court violated her substantive due process rights to custody and control of Kylee by issuing a grandparent visitation order. Citing *Troxel v. Granville* (2000) 530 U.S. 57 (*Troxel*), she asserts the court should have deferred to her wishes when considering the visitation rights of a nonparent.

A

When the juvenile court terminates its jurisdiction over a dependent child, it may issue custody and visitation orders to be used as the basis for opening a superior court file. (§ 362.4; *In re Jennifer R.* (1993) 14 Cal.App.4th 704, 712.) Custody and visitation orders under section 362.4 are not limited to ensuring the protection of the child, or to mitigating any risk. Instead, they focus on the best interests of the child under all the circumstances, and remain in effect until terminated or modified by the family court. (*In re T.H.* (2010) 190 Cal.App.4th 1119, 1122-1123; *In re Nicholas H.* (2003) 112 Cal.App.4th 251, 268; *In re John W.* (1996) 41 Cal.App.4th 961, 973; *In re Jennifer R.*, at p. 712.) Because the juvenile court " 'has been

---

[3] The court also ordered visitation for Duke. Duke supported the maternal grandparents' request for visitation. He is not a party to this appeal.

intimately involved in the protection of the child,' " it is best situated to make custody and visitation orders based on the child's best interests. (*In re Chantal S.* (1996) 13 Cal.4th 196, 206 (*Chantal S.*).) The court's broad discretion in determining a minor's best interests will not be reversed on appeal unless the party challenging it has clearly shown the court abused its discretion by making an arbitrary, capricious or patently absurd determination. (*In re Stephanie M*. (1994) 7 Cal.4th 295, 318; *In re Tamneisha S.* (1997) 58 Cal.App.4th 798, 806.)[4]

A nonparent, including a grandparent or de facto parent, can be awarded visitation under section 362.4 upon termination of juvenile court jurisdiction. (*In re Robin N*. (1992) 7 Cal.App.4th 1140, 1146 [juvenile court had authority to order visitation with de facto parent when terminating dependency where de facto parent had substantial parental relationship with child who needed consistent and regular contact with him]; *In re Hirenia C.* (1993) 18 Cal.App.4th 504, 518 [§ 362.4 authorizes visitation order in favor of de facto parent on termination of dependency proceedings, even over objections of minor's biological parents].) Even when a parent retains his or her parental rights, there may be instances in which a child would be significantly harmed by not ensuring he or she continues a relationship with a person who has lived with the child for a substantial portion of the child's life and has been "regularly involved in providing day-to-day care, nurturance and guidance for the child appropriate to the child's stage of development . . . . The needs of the child, which are the most important consideration, may sometimes require that a visitation award be made to such a 'de facto

---

4    Kathryn argues we should review the issue de novo because it raises pure questions of law. However, she has identified no legal error requiring application of a de novo standard of review. Where, as here, the court issues a visitation order based on a minor's best interests, we review its decision for abuse of discretion. (*Bridget A*. v. *Superior Court* (2007) 148 Cal.App.4th 285, 300-301; *In re Julie M.* (1999) 69 Cal.App.4th 41, 48.)

parent.' " (*In re Marriage of Gayden* (1991) 229 Cal.App.3d 1510, 1522, 1521; *In re Hirenia C.*, at p. 519.)

B

Here, the court properly considered Kylee's best interests when issuing its visitation order. The maternal grandparents were Kylee's de facto parents and she was very attached to them. She enjoyed visiting them and seeing extended family and friends, and she wanted overnight visits to continue. The evidence showed that maintaining the current visitation schedule would ensure a predictable and stable schedule for Kylee. The court was entitled to find that, absent an order for visitation, Kathryn would not facilitate visits as she stated she would. The court's findings that Kathryn had eliminated the reasons that led to dependency jurisdiction and that it was safe for Kylee to return to Kathryn's custody did not preclude the juvenile court from issuing a visitation order.

C

Kathryn relies on *Troxel* to support her argument that the juvenile court should have deferred to her wishes regarding the maternal grandparents' visitation. In that case, the mother limited the grandparents' visitation after the children's father committed suicide. (*Troxel, supra*, 530 U.S. at pp. 60-61.) The grandparents then sought visitation under a Washington statute permitting any person to petition for visitation rights at any time. The nonparental visitation statute also authorized the trial court to grant visitation whenever, in its view, the visitation would serve the best interests of the child. (*Id.* at p. 61.)

The Supreme Court held that, as applied to the mother and her children, the nonparental visitation statute infringed on "the fundamental right of parents to make decisions concerning

7

the care, custody, and control of their children," a right guaranteed by the due process clause of the Fourteenth Amendment to the United States Constitution. (*Troxel*, *supra*, 530 U.S. at p. 66.) Moreover, the application of that statute violated due process because it allowed any person to seek visitation at any time and it did not require the trial court to consider or defer to a parent's belief that visitation was not in the child's best interests. (*Id.* at p. 67.)[5] The court's decision was based, in part, on the presumption that "fit parents act in the best interests of their children," and no one had ever alleged or found the mother was an unfit parent. (*Troxel*, *supra*, 530 U.S. at p. 68.)

Unlike the mother in *Troxel*, Kathryn was not entitled to the presumption of parental fitness that underlies custody law in family court. (See *Chantal S.*, *supra*, 13 Cal.4th at p. 206; *In re Nicholas H.*, *supra*, 112 Cal.App.4th at p. 268.) This case was decided in juvenile court because Kathryn neglected Kylee, exposed her to serious domestic violence, and consequently lost custody of her for a substantial amount of time. Even after the juvenile court terminated jurisdiction because no protective issues remained, it was entitled to impose, in its role as *parens patriae*, other conditions it deemed were in Kylee's best interests, including continued visitation with the maternal grandparents. (§ 362.4; *In re Roger S.* (1992) 4 Cal.App.4th 25, 30-31.) In issuing its visitation order, the court was not required to defer to Kathryn's wishes.

---

5    The court in *Troxel* did not consider the primary constitutional question of whether the due process clause "requires all nonparental visitation statutes to include a showing of harm or potential harm to the child as a condition precedent to granting visitation." (*Troxel*, *supra*, 530 U.S. at p. 73.) Further, the court did not hold that a parent's constitutional liberty interest in the care, custody and control of his or her children is absolute or that grandparents can never obtain an order permitting them to visit with their grandchildren. (See *In re Marriage of Ross & Kelley* (2003) 114 Cal.App.4th 130, 139-140.)

There was no unconstitutional infringement of Kathryn's fundamental right to make decisions concerning the care, custody and control of Kylee.

D

Kathryn asserts the court erred by issuing a grandparent visitation order without first finding the order was necessary to avert harm to Kylee. She argues the court could not reasonably find detriment to Kylee where there was no evidence Kathryn intended to discontinue visits between Kylee and the maternal grandparents.

A visitation order issued by the juvenile court when jurisdiction is terminated is not " 'an award of custody to a [nonparent],' " which requires a finding of detriment. (*In re B.G.* (1974) 11 Cal.3d 679, 698, 699 [court reversed an order where foster parents were awarded full custody of children under former Civ. Code, § 4600 without a finding it would be detrimental to the child to award custody to the parent].) Here, the court did not order custody of Kylee to a nonparent. Its visitation order, made under section 362.4, was not limited to ensuring Kylee's protection or mitigating any risk to her, but instead properly addressed her best interests under all the circumstances. (*In re Hirenia C.*, *supra*, 18 Cal.App.4th at p. 520.) No detriment finding was required.

Kathryn argues there was no evidence she intends to discontinue visits between Kylee and the maternal grandparents. However, the record shows Kathryn had a difficult and sometimes hostile relationship with the maternal grandparents. Although the maternal grandparents raised Kylee and played a significant role in her life, Kathryn opposed any visitation order for them, claiming she should be the one to decide if and when those visits occurred. At the contested hearing on the issue of visitation, the court expressed its concern

9

that Kathryn wanted "to be in control and call the shots," and would not always make visitation decisions that were in Kylee's best interests. In this regard, the court was entitled to establish ongoing protections for Kylee by issuing an order for visitation with her maternal grandparents. (See *Chantal S.*, *supra*, 13 Cal.4th at p. 212.)

II

Kathryn contends the issue of grandparent visitation was a private scheduling dispute between Kathryn and the maternal grandparents, which should be decided in the family court, not the juvenile court.[6]

As we have discussed, section 362.4 authorizes the juvenile court to issue visitation orders, even as to nonparents. Although both the family court and the juvenile court focus on the best interests of the child, the juvenile court has a special responsibility to the child as *parens patriae* and must look at the totality of the child's circumstances. (*In re Roger S.*, *supra*, 4 Cal.App.4th at pp. 30-31.) By empowering the juvenile court to issue custody and visitation orders when it terminates jurisdiction, the Legislature has expressed its belief that " 'the juvenile court is the appropriate place for these matters to be determined . . . .' " (*Id*. at p. 31.) The juvenile court was the proper forum for determining visitation, including an order for visitation between Kylee and the maternal grandparents.

---

[6] Kathryn also contends Family Code section 3104, subdivision (a), which allows a grandparent to petition for visitation of a minor child, does not apply in juvenile court. We agree, but note the juvenile court did not rely on this statute in issuing its visitation order.

DISPOSITION

The judgment is affirmed.



McDONALD, J.

WE CONCUR:


McCONNELL, P. J.


NARES, J.