Filed 2/22/23  P. v. Padilla CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JUAN MARTIN PADILLA,<br><br>    Defendant and Appellant. | F082966<br><br>(Super. Ct. No. 240596)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Stanislaus County.  Dawna Reeves, Judge.

Kyle Gee, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Christina H. Simpson, Amanda D. Cary, and William K. Kim, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

In 2001, appellant Juan Martin Padilla was convicted of conspiracy to commit murder (Pen. Code,[1] §§ 182/187), first degree murder (§ 187, subd. (a)), four counts of premeditated attempted murder (§§ 664/187), and active participation in a criminal street gang (§ 186.22, subd. (a)). The trial court sentenced Padilla to an aggregate indeterminate term of 155 years to life in state prison.

In 2019, following the enactment of Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill No. 1437), Padilla filed a petition for resentencing under former section 1170.95,[2] seeking to vacate his conviction for murder.[3] Following the appointment of counsel, the submission of briefs, and oral argument, the trial court denied Padilla's petition, finding that he is ineligible for resentencing relief as a matter of law.

On appeal, Padilla contends the trial court reversibly erred by denying his petition without holding an evidentiary hearing. We affirm. As discussed herein, Padilla's conviction for conspiracy to commit murder conclusively shows that the jury found Padilla had the intent to kill, and not merely imputed malice. This finding supports his conviction for murder under amended sections 188 and 189. He is therefore ineligible for resentencing relief under section 1172.6 as a matter of law.

---

[1]    All further undefined statutory citations are to the Penal Code unless otherwise indicated.

[2]    Effective June 30, 2022, section 1170.95 was renumbered section 1172.6, with no change in text (Stats. 2022, ch. 58, § 10). Padilla filed his petition prior to this renumbering, and he therefore referred to the statute as section 1170.95 in his petition.

[3]    Padilla's petition for resentencing was filed well before the enactment of Senate Bill No. 775 (2021-2022 Reg. Sess.) (Senate Bill No. 775), which extended resentencing relief under former section 1170.95 to those convicted of voluntary manslaughter and attempted murder. Because Padilla has not requested resentencing relief upon his convictions for premediated attempted murder in the trial court below, we express no view as to whether he is entitled to resentencing relief on these convictions.

## PROCEDURAL HISTORY

In February 2001, a jury convicted Padilla of conspiracy to commit murder (§§ 182/187), the first degree murder of Johnny Saycocie (§§ 187, 189), the attempted murder of Sammy Bergara (§§ 664/187), the attempted murder of Rigo Moreno (§§ 664/187), the attempted murder of Adam Caballero (§§ 664/187), the attempted murder of "John Doe" (§§ 664/187), and active participation in a criminal street gang (§ 186.22, subd. (a)). The trial court sentenced Padilla to prison for a total indeterminate term of 155 years to life.

On January 11, 2019, Padilla filed a petition for resentencing on his first degree murder conviction under former section 1170.95.

On February 28, 2019, the District Attorney filed a brief in opposition to Padilla's petition.

On April 3, 2019, the superior court appointed counsel to represent Padilla.

On August 9, 2019, Padilla filed a reply to the District Attorney's opposition.

On April 12, 2021, counsel filed an amended response to the District Attorney's opposition.

On April 16, 2021, the District Attorney filed a supplemental response.

On April 26, 2021, the superior court heard argument on Padilla's petition.

On April 27, 2021 the superior court filed a written order denying Padilla's petition for resentencing.

On May 19, 2021, further proceedings were held on Padilla's petition.

Padilla filed a timely notice of appeal.

## STATEMENT OF FACTS

The following statement of facts is derived from this court's unpublished opinion in *People v. Padilla et al.* (June 25, 2003, F038205) [nonpub. opn.].[4] Some details of

---

[4] We provide the following statement of facts to give context to the nature of Padilla's criminal conviction. We do not rely upon these facts in determining whether

the underlying crime have been omitted from this discussion as they are not relevant to the disposition of this appeal.

During the early morning hours of February 21, 1999, Dale Guttierrez, Sengaloung Khattiyavong, and Padilla, all members of allied criminal street gangs, were leaving a crowded house party attended by rival gang members. As the party broke up, someone yelled out, " 'get strap,' " which is a reference to getting guns.

Guttierrez pulled out a firearm and began shooting into an unarmed crowd. Khattiyavong and Padilla also began shooting into the crowd. Guttierrez, Khattiyavong, and Padilla fired more than 50 rounds during the incident, killing 15-year-old Johnny Saycocie and wounding three others.

A few days to a week before the party, Guttierrez asked Louise Long, a woman who lived with his parents, to purchase bullets for the defendants and some other individuals. The bullets he requested are designed for deep penetration and are referred to as " 'cop killers' " on the street. Long purchased one box of nine-millimeter ammunition and gave the box to Guttierrez. When they returned home, Long saw the defendants polishing bullets to eliminate any fingerprints and loading their firearms.

On the night of the party, Roger Bounnhaseng, a member of the same criminal street gang to which Khattiyavong belonged, observed the defendants loading firearms at Guttierrez's house. Bounnhaseng observed the defendants with an M1 assault rifle and a nine-millimeter handgun. Padilla claimed the nine-millimeter handgun belonged to him. Bounnhaseng brought over a Mac 11 pistol that he had borrowed from a friend. Guttierrez loaded the Mac 11 pistol and the M1 rifle.

---

Padilla made a prima facie showing for resentencing relief. (See *People v. Cooper* (2022) 77 Cal.App.5th 393, 406, fn. 9 ["Senate Bill 775 prevents a trial court from relying on facts recited in an appellate opinion to rule on a petition under section 1170.95."].)

At approximately 10:00 p.m., the group, along with additional members of the gang, convened at Guttierrez's house and thereafter left for the party. The group took two vehicles. The defendants, armed, traveled in one vehicle driven by S.D, along with two other individuals. S.D. had a valid driver's license, was not on probation, and would therefore not be searched if she were stopped by law enforcement. With the exception of driving Padilla and Bounnhaseng to purchase beer at some point during the party, S.D. remained in the vehicle within shouting distance of the party, parked and went to sleep in the driver's seat.

Guttierrez had a nine-millimeter handgun inside of his jacket pocket, Padilla had the M1 rifle in the leg of his pants, and Khattiyavong had the Mac 11 concealed in the waistband of his pants.

During the party, Khattiyavong and Padilla showed their weapons to an unidentified Hispanic male and suggested they would use their guns " 'if there was any trouble.' " Racial and gang tensions began to escalate, culminating in a verbal confrontation. Some of the partygoers began throwing gang signs and yelling out their respective gang affiliations.

A woman announced that the party was over, and people began to leave. As Guttierrez, Khattiyavong, and Padilla were leaving, someone shouted out, " 'get strap.' "

Guttierrez began shooting toward the house and a crowd of people, hitting Saycocie. Khattiyavong and Padilla began shooting too and continued to do so until their clips were empty. Twenty-six of the shell casings subsequently recovered from the scene matched the M1 rifle used by Padilla and 12 of the nine-millimeter casings matched the Mac 11 pistol used by Khattiyavong. The remaining 14 nine-millimeter shell casings recovered from the scene could have been fired from a Taurus nine-millimeter handgun.

Eyewitnesses testified that no one had behaved aggressively toward Khattiyavong, Guttierrez, or Padilla prior to the shooting, and that no one else was observed with weapons prior to the shooting. The defendants were the only people observed shooting.

5.

After Khattiyavong was arrested, Guttierrez fled to Idaho with his father and Long. While in Idaho, Long overheard Guttierrez state that " 'he set up the boys to go to the party. It was his idea.' " He said " '[t]hat he knew that it was a rival gang members' party, and by being there, he knew that it would be trouble.' " Guttierrez admitted that he yelled out, " 'They've got a gun,' " and started shooting as a way of instigating the shooting. He did not know whether someone actually had a gun. Guttierrez explained that he wanted to start a war between rival gangs and that he wanted to be the gang's leader. If he could eliminate the rival gang then he would assume control over its territory. Guttierrez went to the party with the intent to fire his gun. Long interpreted Guttierrez's comment to mean that he had " 'set his friends up.' "

### The Jury Instructions

Padilla, Guttierrez, and Khattiyavong were jointly charged with murder, conspiracy to commit murder, conspiracy to commit assault with a firearm, and four counts of premeditated attempted murder with enhancements for the personal use of a firearm, and active participation in a criminal street gang. The jury was instructed that it could convict the defendants of murder or attempted murder as direct perpetrators, aiding and abetting with express malice, or based upon a conspiracy.

With respect to conspiracy, the jury was instructed on coconspirator joint responsibility where liability attaches for a murder or attempted murder when the crime was a natural and probable consequence of the agreed-upon crime (CALJIC No. 6.11). The prosecutor theorized that the defendants had conspired to commit murder and assault with a firearm, both of which were charged offenses.

The jury's verdict forms were made part of the record on appeal. These forms show that the jury found Guttierrez, Khattiyavong, and Padilla guilty of conspiracy to commit murder, but found them not guilty of conspiracy to commit assault with a semiautomatic firearm. The jury also found Guttierrez, Khattiyavong, and Padilla not guilty of the charged offenses of assault with a semiautomatic firearm.

6.

*The Trial Court's Order*

In an order dated April 27, 2021, the trial court denied Padilla's petition for resentencing, explaining:

> "Petitioner has not made a prima facie showing that he is eligible for relief under Penal Code section 1170.95(a)(3) because he was found guilty by a jury of deliberate premeditated first degree murder under a legal theory that remains valid.

> "In order to obtain relief under Penal Code section 1170.95 Petitioner must make a prima facie showing that he could not now be convicted of first or second degree murder because of statutory changes. A review of the record of conviction demonstrates that Petitioner was charged with and convicted of premediated deliberate first degree murder. The appellate court affirming Petitioner's conviction noted that all three '[d]efendants demonstrated a significant degree of planning and coordination and an unmistakable intent to kill' when they concurrently fired a barrage of over 50 rounds indiscriminately into a crowd with the intent to kill rival gang members. The indictment, jury instructions and verdict forms evidence that Petitioner was charged with and found guilty under multiple theories of murder, one of which included an express finding that he acted intentionally, deliberately and with premeditation."

## DISCUSSION

Padilla contends that the trial court erred in denying his petition for resentencing without holding an evidentiary hearing for the following reasons: (1) Padilla may have been found guilty of first degree murder under the natural and probable consequences doctrine; (2) the trial court erred in relying on facts and fact-based conclusions in this court's appellate opinion affirming Padilla's judgment of conviction on direct appeal; and (3) counsel was constitutionally ineffective in representing Padilla on his petition. Following our independent review of the record, we conclude that Padilla has failed to show reversible error.

## I.     Senate Bill No. 1437

Effective January 1, 2019, the Legislature passed Senate Bill No. 1437 "to amend the felony murder rule and the natural and probable consequences doctrine ... to ensure

that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) Senate Bill No. 1437 accomplished this task by adding three separate provisions to the Penal Code. (*People v. Gentile* (2020) 10 Cal.5th 830, 842 (*Gentile*).)

First, to amend the natural and probable consequences doctrine, the bill added section 188, subdivision (a)(3), which requires a principal to act with malice aforethought before he or she may be convicted of murder. (§ 188, subd. (a)(3); accord, *Gentile*, *supra*, 10 Cal.5th at pp. 842-843.) Second, to amend the felony-murder rule, the bill added section 189, subdivision (e), which provides:

> " 'A participant in the perpetration or attempted perpetration of [qualifying felonies] in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2.' " (§ 189, subd. (e); accord, *Gentile*, *supra*, 10 Cal.5th at p. 842.)

Finally, the bill added former section 1170.95 to provide a procedure for those convicted of a qualifying offense "to seek relief under the two ameliorative provisions above." (*Gentile*, *supra*, 10 Cal.5th at p. 843.) This procedure is available to persons convicted of "felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, attempted murder under the natural and probable consequences doctrine, or manslaughter." (§ 1172.6, subd. (a).)

"Section 1170.95 lays out a process" for a person convicted of one of the aforementioned offenses "to seek vacatur of his or her conviction and resentencing."

(*Gentile, supra*, 10 Cal.5th at p. 853.) First, an offender must file a petition in the sentencing court averring that:

> "(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine[;]

> "(2) The petitioner was convicted of murder, attempted murder, or manslaughter following a trial or accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder or attempted murder[; and]

> "(3) The petitioner could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019." (Former § 1170.95, subd. (a)(1)-(3); see former § 1170.95, subd. (b)(1)(A); accord, *People v. Lewis* (2021) 11 Cal.5th 952, 959-960 (*Lewis*).)

Additionally, the petition shall state "[w]hether the petitioner requests the appointment of counsel." (Former § 1170.95, subd. (b)(1)(C).)

If a petition fails to contain the required information and the information cannot be "readily ascertained" by the court, the petition may be denied without prejudice to the filing of another petition. (Former § 1170.95, subd. (b)(2).) Otherwise, counsel must be appointed, if requested. (Former § 1170.95, subd. (b)(3).) The prosecutor must file a response and the petitioner may file a reply. The trial court must then hold a hearing to determine if the petitioner has made a prima facie showing that he or she is entitled to relief. (Former § 1170.95, subd. (c); accord, *Lewis, supra*, 11 Cal.5th at pp. 961-963, 967.) In making this determination, the trial court may rely on the record of conviction. (*Lewis*, at pp. 970-971 ["[t]he record of conviction will necessarily inform the trial court's prima facie inquiry under [former] section 1170.95, allowing the court to distinguish petitions with potential merit from those that are clearly meritless."].) However, "the 'prima facie bar was intentionally and correctly set very low.' " (*Lewis,* at

9.

p. 972.)  The trial court must accept the petitioner's allegations as true and "should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Ibid.*)

If the court determines the petitioner has met his or her prima facie burden, "the trial court must issue an order to show cause and hold a hearing to determine whether to vacate the murder[, attempted murder, or manslaughter] conviction and to resentence the petitioner on any remaining counts." (*Gentile, supra*, 10 Cal.5th at p. 853; accord, former § 1170.95, subds. (c), (d)(1).)  At the hearing, the prosecution must "prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing." (Former § 1170.95, subd. (d)(3).)  The prosecutor and the petitioner may offer new or additional evidence to meet their respective burdens. (*Ibid.*)

## II.  Senate Bill No. 775

On October 5, 2021, the Governor signed Senate Bill No. 775 into law, and its amendments to section 1170.95 became effective on January 1, 2022. (Stats. 2021, ch. 551, § 2.)  Senate Bill No. 775 amended former section 1170.95, subdivision (d)(3) to provide the following, in relevant part:  *The court may also consider the procedural history of the case recited in any prior appellate* opinion. (Former § 1170.95, subd. (d)(3).)

Prior to the enactment of Senate Bill No. 775, the trial court could consider the factual summary recited in an appellate opinion at an evidentiary hearing under section 1170.95, subdivision (d)(3), because the factual summary was admissible as reliable hearsay. (See, e.g., *People v. Williams* (2020) 57 Cal.App.5th 652, 660-663; *People v. Brimmer* (2014) 230 Cal.App.4th 782, 800 [the record of conviction may include the underlying facts as summarized in an appellate opinion].)

Following the enactment of Senate Bill No. 775, however, the "Legislature limited use of prior appellate opinions [in hearings under section 1170.95, subdivision (d)], allowing trial judges to 'consider the procedural history of the case recited.' " (*People v.*

10.

*Clements* (2022) 75 Cal.App.5th 276, 292.) Through the passage of Senate Bill No. 775, "the Legislature has decided trial judges should not rely on the factual summaries contained in prior appellate decisions when a section 1170.95 petition reaches the stage of a full-fledged evidentiary hearing." (*People v. Clements*, *supra*, at p. 292; accord, *People v. Cooper* (2022) 77 Cal.App.5th 393, 400, fn. 9 ["Senate Bill 775 prevents a trial court from relying on facts recited in an appellate opinion to rule on a petition under section 1170.95"].) "If such evidence may not be considered at an evidentiary hearing to determine a petitioner's ultimate eligibility for resentencing, … such evidence …[cannot] establish, as a matter of law, a petitioner's ineligibility for resentencing at the prima facie stage." (*People v. Flores* (2022) 76 Cal.App.5th 974, 988, fn. omitted.)

### III. Analysis

#### A. Padilla is Ineligible for Relief as a Matter of Law

Conspiracy is a specific intent crime. To be convicted of conspiracy, a defendant must harbor the specific intent to carry out the contemplated crime. (*People v. Cortez* (1998) 18 Cal.4th 1223, 1229.) "[C]onspiracy to commit murder can only take a single form: It 'requires a finding of unlawful intent to kill, i.e., express malice' [citation] and 'is necessarily conspiracy to commit premeditated and deliberated first degree murder.' " (*People v. Ware* (2022) 14 Cal.5th 151, 167.)

Here, the jury was explicitly instructed on this point pursuant to CALJIC No. 8.69, which provides: "A conspiracy to commit murder is an agreement entered into between two or more persons with the specific intent to agree to commit the crime of murder and with the further specific intent to commit that murder, followed by an overt act committed in this state by one or more of the parties for the purpose of accomplishing the object of the agreement." These instructions further provide: "The crime of conspiracy to commit murder requires proof that the conspirators harbored express malice aforethought, namely, the specific intent to kill another human being."

11.

By convicting Padilla of conspiracy to commit murder, the jury found that he acted with express malice. (*People v. Ware*, *supra*, 14 Cal.5th at p. 167.) That finding renders him ineligible for resentencing relief under section 1172.6 as a matter of law. Contrary to Padilla's assertion, the jury did not impute malice to him. (See, e.g., *People v. Medrano* (2021) 68 Cal.App.5th 177, 183-184 ["in convicting [the petitioner] of first degree murder, the jury did not rely on the natural and probable consequences doctrine because it found him guilty of conspiracy to commit first degree murder"].) Consequently, the trial court did not err in denying Padilla's petition for resentencing.

Padilla attempts to resist this conclusion by arguing that the jury instructions nonetheless permitted the jury to convict him of murder as a natural and probable consequence of a lesser offense. In his reply brief, Padilla explains that the jury could have convicted him of first degree murder, premeditated murder, and conspiracy to commit murder "without having to decide that [he] killed, intended to kill, or aided and abetted with intent to kill." According to Padilla: "If he entered into a conspiracy to commit the general intent crime of assault with a semiautomatic firearm, and if other members of that lesser conspiracy entered into a conspiracy to commit murder, and if other members of that lesser conspiracy committed premeditated murder and attempted murder, Mr. Padilla as a member of the lesser conspiracy would be guilty of all of the ensuing and more serious offenses under CALJIC 3.00, 3.02, 8.26, and 6.11."

Padilla's attempt to cobble together a legal theory upon which malice could have been imputed to him is unpersuasive. As discussed, to convict Padilla of conspiracy to commit murder; the jury necessarily found that he had express rather than imputed malice. (See *People v. Ware*, *supra*, 14 Cal.5th at p. 167.)

Moreover, Padilla's hypothetical does not apply because he was found not guilty of conspiracy to commit assault with a semiautomatic firearm. The verdict form gave the jury the option of convicting Padilla of one or both conspiracies, or neither. He was convicted only of conspiracy to commit murder, and in so doing, the jury was instructed

12.

that it had to find he had the specific intent to commit murder, i.e., express malice. Thus, Padilla's suggestion that the jury could have convicted him of murder as a natural and probable consequence of his participation in a conspiracy to commit assault with a semiautomatic firearm is foreclosed by the record.

**B.      Padilla's Remaining Claims Fail to Demonstrate Reversible Error**

Padilla further contends the trial court erred by relying on facts recited in our prior opinion following his direct appeal. Padilla's petition was heard and decided prior to the passage and enactment of Senate Bill No. 775. Following the enactment of Senate Bill No. 775, facts recited in an appellate opinion may not be used to establish a petitioner's ineligibility for resentencing, either at a section 1172.6 evidentiary hearing or at the prima facie stage. (*People v. Cooper, supra,* 77 Cal.App.5th at p. 400, fn. 9; *People v. Flores, supra,* 76 Cal.App.5th at p. 988.)

In its written order, the trial court below stated the following: "The appellate court affirming [Padilla's] conviction noted that all three '[d]efendants demonstrated a significant degree of planning and coordination and an unmistakable intent to kill' when they concurrently fired a barrage of over 50 rounds indiscriminately into a crowd with the intent to kill rival gang members." Assuming without deciding that reliance upon our prior statement was improper, Padilla has failed to show that the trial court committed reversible error.

To demonstrate prejudice from the denial of a section 1170.95 petition before the issuance of an order to show cause, the petitioner must show it is reasonably probable that, absent error, his or her petition would not have been summarily denied without an evidentiary hearing. (*Lewis, supra*, 11 Cal.5th at pp. 972-974; see *People v. Watson* (1956) 46 Cal.2d 818, 836.) As discussed in Part III.A, *ante*, Padilla is ineligible for resentencing relief as a matter of law.

Although Padilla contends the trial court's reasons for denying his petition were erroneous, on review from the trial court's denial of a petition for resentencing (§ 1172.6), we review the correctness of the trial court's ruling, rather than the reasons for the trial court's ruling. (*Kennedy v. Superior Court* (2006) 145 Cal.App.4th 359, 368, quoting *Punsly v. Ho* (2003) 105 Cal.App.4th 102, 113 [" '[a] judgment or order correct in theory will be affirmed, even where the trial court's given reasoning is erroneous' "].) Thus, if a petitioner is ineligible for section 1172.6 resentencing relief as a matter of law, as is the case here, the lower court's denial of his or her petition for resentencing will be affirmed, regardless of the reasons for the court's ruling. Because Padilla is ineligible for resentencing relief as a matter of law, the trial court's presumed error is harmless.[5]

## DISPOSITION

The trial court's April 27, 2021 order denying Padilla's petition for resentencing under former section 1170.95 is affirmed.

SMITH, J.

WE CONCUR:

PEÑA, Acting P. J.

DE SANTOS, J.

---

[5] Padilla submits that if any of his claims of error have been waived or forfeited, his trial counsel was constitutionally ineffective. The Attorney General does not suggest that any of Padilla's claims are procedurally barred. In light of our conclusion that Padilla is ineligible for resentencing relief as a matter of law, we do not address his claim of ineffective assistance of counsel. There can be no ineffective assistance of counsel without an affirmative showing of prejudice (see *Strickland v. Washington* (1984) 466 U.S. 668, 687), and prejudice has not been shown here.